544 A.2d 527

Allegheny County Health Department, Petitioner
*v.* Edward Bandyk, Respondent.

Argued March 24, 1988, before Judges CRAIG and PALLADINO, and Senior Judge BARBIERI, sitting as a panel of three.

*Robert G. Borgoyn, Jr.,* Assistant County Solicitor, with him, *James J. Dodaro,* County Solicitor, for petitioner.

*Christopher M. Swart,* with him, *Samuel A. Moore,* for respondent.

OPINION BY JUDGE CRAIG, June 24, 1988:

The Allegheny County· Health Department (department) appeals from a decision of the State Civil Service Commission (commission) that sustained the appeal of Edward Bandyk from the department's removal of Bandyk from his position as a probationary status employee and ordered the department to reinstate him, as a regular status employee, with back pay.

The central issue presented is whether a probationary employee's proof of procedural errors relating to his employment constitutes affirmative proof of discrimination based on non-merit factors.

## Findings

The commission found that the department hired Bandyk in the position of Health Services Coordinator I, effective September 30, 1985, and notified him that he would be required to serve a six-month probationary period due to expire on March 30, 1986 (Findings of Fact Nos. 2 and 3). During his probationary period, the

department changed Bandyk's job classification from Health Services Coordinator to Environmental Health Services Coordinator; the department provided Bandyk with a formal job description for the latter position on March 5, 1986 (F.F. No. 7).

On March 25, 1986, Michael J. Diskin, one of Bandyk's supervisors, prepared a formal evaluation of Bandyk's performance during his probationary period (F.F. No. 5). Diskin's memorandum accompanying his evaluation recommended that Bandyk not be placed on permanent status. The department's director removed Bandyk from the position of Health Services Coordinator I, probationary status, by letter dated March 25, 1986, effective at the close of business on the next day, citing unsatisfactory performance as the reason for the termination (F.F. No. 1).

Bandyk appealed his removal to the State Civil Service Commission, alleging that the department's action was discriminatory because it was based on the non-merit reasons of "my outside employment and exercise of free speech." After a hearing, the commission sustained Bandyk's appeal and issued the order noted above. The commission concluded that Bandyk proved "violations of mandated appointing authority procedures," which it deemed to be "indicative of a negative attitude against the appellant which pervaded the appointing authority's removal action."

### Section 905.1 of the Civil Service Law

The department contends that Bandyk failed to meet his burden before the commission of going forward with affirmative evidence that his discharge was based on non-merit factors. Therefore, the department asserts, the commission erred as a matter of law by not dismissing Bandyk's appeal at the close of his evidence.[1]

---

[1] This court's scope of review of a State Civil Service Commission adjudication is limited to determining whether the commission

Section 951(b) of the Civil Service Law[2] grants a right to a hearing, upon appeal to the commission, to "[a]ny person who is aggrieved by an alleged violation of section 905.1 of this act . . . ." Section 905.1[3] provides:

*No officer or employe* of the Commonwealth *shall discriminate against any person in* recruitment, examination, appointment, training, promotion, *retention or any other personnel action with respect to the classified service because of* political or religious opinions or affiliations[,] because of labor union affiliations or because of race, national origin or other *non-merit factors.* (Emphasis added.)[4]

Allegheny County created its health department by action authorized under the Local Health Administra-

------

violated constitutional rights or committed error of law or whether its necessary findings of fact were not supported by substantial evidence. *Insurance Department v. Tracz,* 77 Pa. Commonwealth Ct. 502, 466 A.2d 269 (1983); *Estate of McGovern v. State Employees' Retirement Board,* 512 Pa. 377, 517 A.2d 523 (1986).

[2] Act of August 5, 1941, P.L. 752, *as amended,* section 951 added by section 27 of the Act of August 27, 1963, P.L. 1257, 71 P.S. §741.951(b).

[3] Act of August 5, 1941, P.L. 752, *as amended,* added by section 25 of the Act of August 27, 1963, P.L. 1257, 71 P.S. §741.905a.

[4] An employee who proves that an appointing authority took an adverse personnel action against him for a non-merit reason has proved discrimination. In a properly functioning merit system of employment, such as that established under the Civil Service Law, the presumption exists that personnel actions regarding other employees were based on merit factors only. Thus an employee who proves that action against him was based on a non-merit factor has proved disparate treatment, and he need not prove anything more. For example, an employee who proved that he was dismissed because he was black would not have to prove that other employees were not dismissed because they were not black in order to make out his claim of discrimination.

tion Law.[5] Section 10(b) of that law[6] provides in part that a county department of health:

> shall have the power to employ personnel to assist the board of health and the health director. The recruitment, selection, tenure, removal and working conditions of all personnel shall conform to the standards of personnel administration prescribed by the State Department of Health. . . .

Thus the prohibition of discrimination found in section 905.1 of the Civil Service Law clearly applies to actions taken by the Allegheny County Health Department.

In *Hunter v. Jones,* 417 Pa. 372, 207 A.2d 784 (1965), the Pennsylvania Supreme Court explained the section 951(b) grant of a hearing when probationary employees claim violations of section 905.1, by stating:

> What the Act permits is for each appellee to challenge his dismissal by specifically reciting the basis underlying his claim of discrimination and thereafter factually substantiating that claim upon hearing. If the complainant cannot sustain his allegations of discrimination, then his dismissal must stand without any right of appeal as to the validity of the determination of unsatisfactory work performance.

*Hunter v. Jones,* 417 Pa. at 379, 207 A.2d at 788-89.[7]

This court interpreted that direction from *Hunter v. Jones* in *Tempero v. Department of Environmental Re-*

---

[5] Act of August 24, 1951, P.L. 1304, *as amended,* 16 P.S. §§12001-12028.

[6] 16 P.S. §12010(b).

[7] The commission's regulation relating to procedure under section 951(b), 4 Pa. Code §105.16(a), provides in pertinent part:

> The appellant shall go forward to establish the charge of discrimination. If at the conclusion of this presentation, the appellant has, in the opinion of the Commission, established a *prima facie* case, the appointing authority shall then be afforded the opportunity to respond to the charge.

*sources,* 44 Pa. Commonwealth Ct. 235, 403 A.2d 226 (1979). There public employees argued that, because the commission found that their reassignments were not based on their inability to perform their duties satisfactorily, the commission should have sustained their challenges to the reassignments under section 905.1.[8] The court rejected that argument as follows:

> The fallacy of this argument is that the issue before the Commission was not the details of Petitioners' work performance. The [§951(b)] hearing was singularly concerned with the presence or absence of discriminatory influences on their reassignments. Skowronski v. Governor's Council on Drug and Alcohol Abuse, 28 Pa. Commonwealth Ct. 236, 368 A.2d 852 (1977). Discrimination cannot be inferred merely because of the existence of good performance ratings. *There must be some affirmative support adduced to sustain the allegations of discrimination.*

*Tempero,* 44 Pa. Commonwealth Ct. at 238-39, 403 A.2d at 228-29 (emphasis added).

---

[8] Although the complainants in *Tempero* were regular status employees, their only avenue for appealing the reassignments was by alleging discrimination. Section 951(a) provides that any regular status employee may appeal any "permanent separation, suspension for cause, furlough or demotion on the grounds that such action has been taken in his case in violation of the provisions of this act. . . ." In a section 951(a) hearing the burden is on the appointing authority to go forward with evidence to establish the charge or charges on which the personnel action was based. 4 Pa. Code §105.15(a). Because reassignment is not one of the actions enumerated in section 951(a), the complainants could appeal only under section 951(b). As noted above, in a section 951(b) proceeding the burden is on the complainant to go forward to establish the charge of discrimination.

### Explicit Proof of Discriminatory Intent

The department contends that Bandyk's affirmative proof of discrimination consisted entirely of his own testimony concerning his personal feelings that his superiors were "jealous" of him because he was not economically dependent on his job with the department (unlike other employees) due to his outside employment.[9] Bandyk conceded that he could point to no statement by anyone in a position of authority over him indicating jealousy.

If the department is making the point that an employee's simply repeating bald allegations of discriminatory intent at a hearing, without further support, does not constitute the affirmative proof of discrimination required by *Hunter v. Jones,* then its position is unexceptionable. However, if the department is asserting that affirmative proof of discrimination can only take the form of evidence of statements by appointing authority officials betraying a discriminatory intent, then the department has misunderstood our precedents. Although evidence of such statements certainly would support a finding of discrimination, such *explicit* proof of discriminatory intent is not the only form of affirmative evidence of discrimination that might satisfy the requirements of *Hunter v. Jones.* Nevertheless, Bandyk's testimony concerning his own feelings, without more, clearly does not constitute substantial evidence to support a finding of discriminatory intent on the part of his superiors.

---

[9] In fact, Bandyk offered slightly more than this as proof of his claim of jealousy. On cross-examination he testified that two employees not superior to him told him to "be cautious" because his superiors would move to dismiss him if they felt that they could not control him. This testimony, even if fully credited, was not conclusive on the issue.

## Proof of Procedural Defects as Affirmative Proof of Discrimination

Bandyk's argument throughout these proceedings has been that procedural irregularities relating to his probationary employment lend support to his allegations of jealousy and demonstrate that he was removed for non-merit reasons. The principal irregularities that he alleges are (1) the department's failure to conduct an evaluation of him at least four weeks before the end of his probationary period, in violation of the department's own rules, and (2) the department's failure to provide him with a written description of the position for which he was evaluated until some three weeks before the end of his probation, coupled with a failure by the department otherwise to provide him with adequate direction and feedback concerning his responsibilities and his performance.

The department, by asserting that Bandyk's testimony concerning his feelings that his superiors were jealous of him was his only affirmative proof of discrimination, implies that evidence of procedural defects cannot constitute the affirmative proof of discrimination required by *Hunter v. Jones*. Nevertheless, the department denies that its treatment of Bandyk involved any procedural defects, and it argues that the commission committed error of law by concluding that such defects were present and then relying on them to find discrimination.

The department adopted rules of personnel administration pursuant to power conferred under the Local Health Administration Law, including Article I, Merit System Personnel Administration. Section 108B of Article I, "Conditions Preliminary to Permanent Employment," provides that at least four weeks before the end of an employee's probationary period, the personnel officer shall obtain from the employee's supervisor a writ-

ten evaluation of the employee's performance and a recommendation regarding permanent employment, which should be submitted to the director for final action. Section 108C, "Dismissal During Probation," provides that at any time during the probationary period the director may separate an employee without right of appeal, except regarding allegations of discrimination, but the reasons for the dismissal must be submitted in writing to the personnel officer, and a copy should be filed with the state health department.

The department contends that section 108C, only, applies to its dimissal of Bandyk, and that it met the requirements of that section because it filed a written statement of reasons. Bandyk contends, and the commission agreed, that section 108B also applies, and that the department violated that section by failing to conduct an evaluation of him until some four days before the end of his probationary period. The commission also concluded that the department violated its own rules by failing to provide Bandyk with a written job description for the position for which he was evaluated until three weeks before the end of his probationary period.

This court consistently has recognized that "the probationary status civil service employee does not enjoy the job security afforded persons on regular status, who may be removed only for just cause." *Cunningham v. State Civil Service Commission,* 17 Pa. Commonwealth Ct. 375, 377, 332 A.2d 839, 840 (1975) (footnote omitted). The court has held that "[a]s long as the reasons for removal are job related and not tainted by discriminatory motives, the safeguards given in the Act to probationary employees are met." *Department of Health v. Graham,* 58 Pa. Commonwealth Ct. 409, 412, 427 A.2d 1279, 1281 (1981).

As the department correctly notes, in order to hire personnel effectively under a merit system, an agency

must use the probationary period effectively. During this period procedural requirements are at a minimum, and the employer has great flexibility to terminate at any time, subject only to the requirement that such termination not be the result of discrimination. This flexibility permits the civil service employer to remove a probationary employee who demonstrates in any manner that he is unwilling or unable to perform his duties adequately *before* the procedural safeguards accorded regular status employees (including the burden on the employer to show "just cause" for the removal, *see,* n.8, supra) come into effect.

This court has recognized that proof of procedural errors can constitute the affirmative proof of discrimination based on non-merit factors in violation of section 905.1 required by *Hunter v. Jones:*

> [S]uch non-merit factors can include employment of a discriminatory procedure in the implementation of a personnel action. See, e.g., Williams v. Department of Transportation, 64 Pa. Commonwealth Ct. 153, 439 A.2d 233 (1982) (use of non-uniform performance evaluation reports for purposes of computing furlough order held discriminatory); Alterman v. Baker, 71 Pa. Commonwealth Ct. 124, 454 A.2d 1154 (1983) (use of unauthorized testing procedures, even if applied to all applicants, is discriminatory).

*Pannacci v. State Civil Service Commission,* 101 Pa. Commonwealth Ct. 602, 609, 516 A.2d 1327, 1330 (1986).

However, this court also has held that an agency's committing procedural error with regard to an employee is not necessarily the equivalent of discrimination. *Insurance Department v. Tracz,* 77 Pa. Commonwealth Ct. 502, 466 A.2d 269 (1983); *Silverman v. Department of Education,* 70 Pa. Commonwealth Ct. 444,

454 A.2d 185 (1982). That is, as to some procedural errors, proof of the error, without more, is not sufficient to establish discrimination.

In an effort to eliminate confusion in this area, this court recently adopted a comprehensive approach to procedural error problems in *Pronko v. Department of Revenue,* 114 Pa. Commonwealth Ct. 428, 539 A.2d 456 (1988).

> [W]here a technical violation of the [Civil Service] Act is alleged and the only appeal route open is via Section 951(b), the case *must* be analyzed in the context of a discrimination claim. . . . We recognized in Baker I [Pennsylvania Board of Probation and Parole v. Baker, 51 Pa. Commonwealth Ct. 501, 414 A.2d 1117 (1980)] and Baker II [Alterman v. Baker, 71 Pa. Commonwealth Ct. 124, 454 A.2d 1154 (1983)] that in such a case a technical violation of the Act constitutes discrimination *per se*. We reiterate that view today, but hold, in addition, that in order to gain some type of relief there must be evidence that the complaining individual was, in fact, harmed because of the technical non-compliance with the Act *or* evidence that because of the peculiar nature of the procedural impropriety he *could have* been harmed but there is no way to prove that for certain. . . .
>
> We also take this opportunity to clear up the confusion on the question of intent by holding that in cases brought under Section 951(b) where a technical violation of the Act (sometimes referred to as a procedural error, procedural impropriety or procedural 'discrimination') constitutes the alleged discrimination, no showing of intent is required. Accord State Correctional Institution at Graterford v. Goodridge, 87

Pa. Commonwealth Ct. 527, 487 A.2d 1036 (1985) (holding that in a case where the appointing authority makes a 'factual,' as opposed to 'procedural' mistake, intent need not be shown). The reason for our holding is that often in cases of technical non-compliance what has occurred is administrative error or mistake. Thus, intent to discriminate could not be shown because it is frequently non-existent. See [Rand, An Examination of Discrimination under the Pennsylvania Civil Service Act, 25 Duq. L. Rev. 209, 232-36 (1987)]. We believe that the Act's purpose, promoting the making of unbiased personnel decisions based upon job-related criteria, would not be furthered were we to permit a mistake which causes a deserving employee to be passed over for promotion to go unrectified. We wish to emphasize, however, that our holding does not excuse the complaining individual from proving intent in the traditional type of discrimination case.

*Pronko, Id.* at 438-39, 539 A.2d at 462 (1988).

The commission's decision in the present case reflects the commission's belief that the department used such abnormally poor management in orienting and training this probationary employee that those errors "effectively discriminated against the appellant." However, poor management and incompetent supervision in general do not consitute technical or procedural violations of the sort outlined in *Pronko*. Therefore, we must examine each of the alleged procedural errors to determine first, whether the error alleged constituted a "technical violation of the Act" or its equivalent, and then, if it did, whether the employee was harmed by the violation or whether absence of harm cannot be determined with certainty.

The department is correct in its assertion that where the local rules expressly address a particular subject matter, they constitute the applicable law. However, the corollary to this proposition is that a technical violation of the local rules is the equivalent of a technical violation of the Civil Service Act.

The commission concluded that the department's failure to provide Bandyk with a written job description for the position of Environmental Health Services Coordinator until three weeks before his termination violated section 104, "Classification Plan," of the department's rules, which requires that positions in the merit system be properly classified. The commission stated: "Presumably, such mandate includes the requirement that the employee be apprised of the classification and concomitant duties prior to having performance assessed." Obviously, an employee should not be terminated or otherwise penalized for failing to perform duties that were never explained to him. However, the commission's conclusion that an adequate explanation of one's duties must include a written job description was error. No other provision either of the local rules or of the commission's regulations expressly requires that a formal, written job description be given to the employee before he may be evaluated. The necessary information regarding a job's responsibilities may be conveyed orally. Indeed, if an employee is confused on this point, the duty to make inquiries is his. In the present case the department's failure to provide Bandyk with a new job description until sometime near the end of his probationary period did not constitute the equivalent of a technical violation of the Civil Service Act.

The commission also concluded that the department committed procedural error by failing to evaluate Bandyk until some four days before the end of his probationary period, instead of four weeks before the

end of the period, as provided in section 108B of the local rules. On this point, the commission was correct. Contrary to the department's characterization, the commission's conclusion does not imply that a probationary employee has a right to employment for six months, but rather simply means that if his employment lasts as long as five months, the department's rules require an evaluation of him at that time. The department did not evaluate Bandyk at the five-month point; hence, the department committed a technical procedural error that was the equivalent of a technical violation of the Civil Service Act.

Consequently, we must determine whether Bandyk was harmed by this procedural error. The section 108B procedure mandating an evaluation of a probationary employee and a recommendation regarding permanent appointment four weeks before the end of the probationary period appears to be designed to serve the dual purposes of allowing sufficient time for an orderly disposition of the matter by the personnel officer and of providing an opportunity for an employee who receives a negative evaluation but is retained after that point to attempt to improve his performance so as to conform to the department's standards. This opportunity is not a matter of right. Because of the section 108C provision that an employee may be separated at any time during the probationary period, the department could conduct an evaluation at five months and dismiss the probationary employee at that time without committing a technical violation. Nevertheless, where, as here, a probationary employee was kept on for a full six months, but the five-month evaluation was not performed and (as the commission found in this case) the employee had no other basis for believing he was not performing satisfactorily, then the failure to conduct the evaluation deprived the employee of the opportunity to improve.

Obviously, we cannot say with certainty that Bandyk was not harmed by the loss of this opportunity.

Of course, this analysis assumes that the employee would be notified of the contents of the performance evaluation. Although section 108B does not expressly provide that the five-month evaluation must be shown to the employee, and the local rules do not otherwise address the question, the commission's regulation relating to notice of personnel actions, 4 Pa. Code §105.2, provides:

> (a)   Written notice shall be required for:
>
> . . . .
>
> (14)   Performance evaluation.
>
> (b)   The signature of the employee on the performance evaluation shall be evidence of written notice of performance evaluation.

The department would be required to notify the probationary employee of the contents of his performance evaluation.

Under the analysis of technical procedural violations adopted by this court in *Pronko v. Department of Revenue,* Bandyk has proved the equivalent of a technical violation of the Civil Service Act, which constitutes discrimination per se. Because the circumstances of this case, unlike those in *Pronko,* are such that we cannot say with certainty that Bandyk was not harmed by the procedural error, he is entitled to relief. Bandyk's satisfying the two-prong test of *Pronko* consitutes the affirmative proof of discrimination required by *Hunter v. Jones.*

Accordingly, we affirm the decision of the Civil Service Commission.

## ORDER

NOW, June 24, 1988, the order of the State Civil Service Commission, at Appeal No. 6671, dated February 20, 1987, is affirmed.