518 A.2d 878

Commonwealth of Pennsylvania, Department of Public Welfare, Petitioner *v.* Richard F. Sanders, Respondent.

Richard F. Sanders, Petitioner *v.* Commonwealth of Pennsylvania, Somerset Mental Retardation Unit, Department of Public Welfare, Respondent.

Argued October 7, 1986, before President Judge CRUMLISH, JR., Judge DOYLE, and Senior Judge KALISH, sitting as a panel of three.

*Howard Ulan*, Assistant Counsel, with him, *James S. Marshall*, Assistant Counsel, for petitioner/respondent.

*Kim R. Gibson,* for respondent/petitioner.

OPINION BY JUDGE DOYLE, December 11, 1986:

Before us are consolidated appeals arising out of attempts by the Department of Public Welfare (DPW) to remove Richard Sanders, a probationary employee, from employment. Sanders was originally removed from his position as Therapeutic Recreational Services Leader, probationary status, effective at the close of business on December 31, 1982 on the basis of unsatisfactory work performance. Sanders appealed his removal to the State Civil Service Commission (Commission) which, after a hearing, sustained the appeal in an order dated September 21, 1983. The Commission in that adjudication determined that Sanders' removal letter had not been signed by Sanders' appointing authority. That issue, however, was raised by the Commission *sua sponte* without notice to the parties after the record had been closed. The Commission directed that Sanders be reinstated, but without prejudice to the appointing Authority to take the removal action again. DPW appealed the Commission's order to this Court, arguing that the raising of the issue without notice to the parties violated due process. We agreed, reversed the Commission and remanded the case to it on October 24, 1984, directing it to issue an adjudication based upon allegations raised in either an original or properly amended appeal form. *Somerset Mental Retardation Unit v. Sanders,* 85 Pa. Commonwealth Ct. 549, 483 A.2d 1018 (1984).

In the interim, Sanders was reinstated and was recalled to work by DPW on October 21, 1983; within one-half hour after reporting to work he was again removed from employment.

On remand from our order of October 24, 1984, the Commission took additional testimony on the signatory authority issue and again determined that the proper in-

dividual had not signed Sanders' removal letter. It thus issued an order, dated August 28, 1985, directing that Sanders be reimbursed for the period of his improper removal, *i.e.*, December 31, 1982 through October 21, 1983. In addition, the Commission, in a separate adjudication issued September 27, 1984, determined that the second removal of Sanders, which Sanders had in the meantime also appealed to the Commission, was proper. Both determinations were appealed to this Court and have been consolidated for our consideration.

In the first appeal, DPW asserts that the Commission erred in its adjudication and order of August 28, 1985 and contends that the original letter was properly signed. Hence, it maintains it is not liable for the backpay accruing during the period from December 31, 1982 through October 21, 1983. In the second appeal, Sanders contends that the Commission's adjudication sustaining his second removal was not supported by substantial evidence and was contrary to law.

We first consider the question of signatory authority. The Commission found that Sanders was employed by the Somerset Mental Retardation Unit (Unit), which Unit was located on the grounds of Somerset State Hospital (Hospital). The Unit and Hospital share certain administrative services, but the Unit is programmatically separate from the Hospital. The Unit's executive officer is the Mental Retardation Unit Director, one Barry Benford. Benford reports to the Regional Commissioner for Mental Retardation, which is under the Office of Mental Retardation. The Hospital is under the aegis of the Office of Mental Health. Both, of course, are within the Department of Public Welfare. The Superintendent of the Hospital is one William Cummings. Sanders' initial removal letter was signed by Cummings.

The Commission, after finding that Cummings was not in Sanders' administrative or supervisory chain of

command, held that his signature on the letter was improper. Our review of the record discloses that Benford testified that, with respect to the Unit, Benford actually made appointment and dismissal decisions, but that letters pertaining to such actions could not be signed by Benford and had to be signed either by the personnel officer or Cummings. Cummings' testimony was consistent with this. The Commission, in its adjudication, did not find that Benford's testimony lacked credibility, but rather held that despite the testimony, the signature was improper. Thus, we have a peculiar situation where all of the *viva voce* testimony establishes that the supervisor within Sanders' administrative chain of command did not possess the authority to sign his letter, whereas a supervisor outside his chain of command did. In addition to the testimony, however, DPW moved into evidence a copy of Section 7105 of its Personnel Manual, which pertains to signature format for personnel notification. This Section provides in pertinent part:

### DPW PERSONNEL MANUAL

### SIGNATURE ELEMENT FORMAT FOR PERSONNEL NOTIFICATION

The Secretary of Public Welfare has delegated to the Executive Deputy Secretary, the power to take personnel actions deemed necessary in the ordinary course of the administration of the Department. The Secretary has also empowered the Executive Deputy Secretary to sign all official letters notifying departmental employes of any and all personnel actions affecting them. These actions include, but are not limited to, terminations, suspensions, furloughs and demotions. The Secretary has also empowered the Executive Deputy Secretary to further delegate authority to sign these letters to such departmental

officials and/or employes as deemed to be appropriate.

It is the decision of the Executive Deputy Secretary that, when a notification letter is not personally signed by the Secretary of Public Welfare or by the Executive Deputy Secretary, it shall be signed by one of the following officials:

**For Headquarters, Field Staff in the Regional Office, and** *other General Governmental units:* the Deputy Secretary for Administration; the Director, Office of Personnel Services; the Director, Bureau of Personnel; or the chief, Headquarters Personnel Division. (Emphasis added.)

. . . .

**For all other** *Hospitals/Centers:* The Superintendent; Personnel Officer; Director, Office of Personnel Services; Director, Bureau of Personnel; Chief, Division of Personnel Transactions and Employe Benefits. (Emphasis added.)

DPW contends that the Unit falls within the category of this Manual Section pertaining to "Hospitals/Centers" and, therefore, that the Superintendent was a proper signatory. The Commission determined, however, that the Unit was, in fact, a *general governmental unit,* a designation for which the Superintendent is not given signatory authority.

It is well-settled that a civil servant may be removed only by his appointing authority. *O'Byrne v. Department of Transportation,* 92 Pa. Commonwealth Ct. 286, 498 A.2d 1385 (1985); *Vaughan v. Department of Education,* 52 Pa. Commonwealth Ct. 38, 415 A.2d 150 (1980); *Moore v. Commonwealth,* 1 Pa. Commonwealth Ct. 73, 272 A.2d 283 (1970). And when a signature on a personnel action letter is challenged as not being that of the appointing authority, the burden to show that the signature is a proper one is with the employing agency. *See Vaughan.* "Appointing authority" is defined in Sec-

tion 3(e) of the Civil Service Act (Act), Act of August 5, 1941, P.L. 752, *as amended,* 71 P.S. §741.3(e), as "the officers, board, commission, person or group of persons having power *by law* to make appointments in the classified service." (Emphasis added.)

Although DPW argues that the Unit falls within the portion of Section 7105 of the Personnel Manual which sets forth signatory requirements for hospitals/centers, it concedes in its brief that the Unit has never had the status of a mental retardation center. DPW brief, p. 9. Accordingly, to fall within the "hospital/center" catagory the Unit must itself be a hospital. It is obvious, however, that the Unit is not a hospital and indeed DPW does not argue that it is. Instead, it argues only that allowing Cummings the authority constitutes a reasonable interpretation of the Section. That, however, is not the relevant inquiry. Signatory authority, as previously noted, is the power given *by law* to sign a personnel action letter. The Manual Section, which is here the relevant "law," does not authorize a superintendent of a hospital to sign a letter on behalf of a Unit. Hence, DPW's argument must fail.[1]

The Commission in its adjudication on remand concluded that the Unit fell within the portion of Manual Section 7105 pertaining to other general governmental units. That portion, which is the only catch-all term

---

[1] In addition, DPW's reliance upon *Hughes v. State Civil Service Commission,* 17 Pa. Commonwealth Ct. 344, 331 A.2d 590 (1975) must be rejected. *Hughes* held that, where there was an allegation that a letter had not been signed by the proper signatory, but the record disclosed that the personnel decision had been concurred in by competent superiors of the signatory, which superiors had signatory power, the removal was proper. There is no testimony that Cummings acted only after his determination to remove had been submitted to and approved by *his superiors* who would have had the signatory authority, *e.g.,* the Secretary or the Deputy Secretary of DPW.

appearing in the Section and thus is the only provision which could possibly be applicable, does not recognize a superintendent as a proper signatory. Accordingly, we hold that the Commission correctly concluded that the first removal was technically improper.[2]

We next consider the Commission's order upholding the second removal of Sanders. We begin by recognizing that a probationary employee may appeal a personnel action to the Commission only by alleging discrimination, *Norristown State Hospital v. Bruce,* 69 Pa. Commonwealth Ct. 298, 450 A.2d 1093 (1982), and that the employee bears the burden in such circumstances. *See* 4 Pa. Code §105.16. Until recently, where, as here, the burdened party had not prevailed below, the inquiry employed on appeal with respect to the factual findings was whether the fact finding body had *capriciously disregarded* competent evidence. *See e.g. Jasper v. Workmen's Compensation Appeal Board,* 498 Pa. 263, 445 A.2d 1212 (1982); *Barrett v. Otis Elevator Co.,* 431 Pa. 446, 246 A.2d 668 (1968); *Gibson v. Department of Public Welfare,* 61 Pa. Commonwealth Ct. 446, 434 A.2d 213 (1981). Our state Supreme Court has now held, however, that under Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704, the scope of review on appeal regardless of which party prevailed below is limited to determining whether there has been a constitutional violation or an error of law and whether the findings of fact are supported by *substantial evidence. Estate of Francis J. McGovern v. State Employees' Retirement Board,* 512 Pa. 377, 517 A.2d 523 (1986).

---

[2] The Notes of Testimony disclose that DPW has since amended Manual Section 7105 to include Unit Directors as proper signatories. N.T. p. 33, April 22, 1985 Remand Hearing. This should alleviate the Commission's concerns over personnel decisions being made by employees outside an individual's chain of command.

In the instant case the Commission found, *inter alia,* that the job in question was a professional one requiring the individual to function independently; that Sanders could not design recreational programs at an appropriate level; that Sanders did not adapt to the required level of documentation; and that a dietary plan submitted by Sanders required revision. Additionally, in a last-ditch effort to offer Sanders another chance, he was given two weeks in which to complete 16 tasks. He achieved only 50-percent compliance. Sanders does not attack the findings of the Commission, but instead suggests that it should have believed his version of the events. The Commission, however, is the sole fact-finder and determiner of credibility, *West Chester State College v. Stein,* 72 Pa. Commonwealth Ct. 561, 457 A.2d 176 (1983), and where, as in the instant case, its findings are substantially supported it does not commit error merely by resolving testimonial conflicts in favor of one party; on the contrary, this is its proper role as the fact finding body.

Our independent review of the record reveals that Sanders failed to show that his treatment was different than that of other employees similarly situated. In addition, the record is replete with instances of work-related failings. Simply stated, Sanders failed to meet his burden to prove discrimination.

Finally, Sanders argues that the Commission committed legal error in sustaining his second removal taken on the same day he was reinstated because DPW presented no evidence of any work-related failings *subsequent* to his reinstatement. This argument is wholly without merit. The Commission's initial order directed reinstatement but further provided "[t]his Order is made without prejudice to the appointing authority to, subsequent to its fulfillment of the terms of this Order, take such personnel action concerning Richard

F. Sanders, including matters which were the subject of this action, as it may decide." The Commission has broad discretion in fashioning an order under Section 951(b) of the Act, 71 P.S. §741.951(b).[3] Until Sanders' second appeal, there was no consideration of the merits of his case at all. To suggest that DPW would have to wait for additional occurrences of unsatisfactory performance is unreasonable inasmuch as its initial reasons had not even been scrutinized by the Commission. We thus hold that the use of reinstatement without prejudice, where technical compliance with the Act was not initially met, is proper and within the Commission's power under Section 951(b).

Based upon the foregoing discussion, both the order of the Commission ordering Sanders reinstated because of an invalid signature on his removal letter and its order sustaining Sanders' second removal are affirmed.

ORDER

Now, December 11, 1986, the order of the State Civil Service Commission, Appeal No. 4379, dated August 28, 1985, and the order of the State Civil Service Commission, Appeal No. 4844, dated September 27, 1984, are hereby affirmed.

---

[3] Section 951(b) was added by Section 27 of the Act of August 27, 1963, P.L. 1257.