590 A.2d 844

**Susan A. NOSKO, Petitioner,**

v.

**SOMERSET STATE HOSPITAL, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 1, 1991.

Decided April 29, 1991.

Gerald S. Robinson, Robinson & Geraldo, Harrisburg, for petitioner.

Jeffrey P. Schmoyer, Asst. Counsel, Pittsburgh, for respondent.

Before SMITH and PELLEGRINI, JJ., and SILVESTRI, Senior Judge.

PELLEGRINI, Judge.

Susan A. Nosko (Ms. Nosko) files a Petition for Review appealing an Order of the Pennsylvania State Civil Service Commission (Commission) dismissing Ms. Nosko's appeal challenging her non-selection for promotion by Somerset State Hospital (Somerset), an appointing authority of the Department of Public Welfare.

Ms. Nosko, employed by Somerset as a Registered Nurse 2 (RN2), submitted a timely application for a vacant position of Registered Nurse Supervisor (RNS) which was posted on September 21, 1989. (Supplemental Reproduced Record (S.R.R.) pp. 144–145). The RNS position was to split his or her time between the 3:00 p.m. and the 11:00 p.m. shifts. Subsequent to posting this position, Somerset decided to eliminate it and post two new positions: one RNS position for the 3:00 p.m. shift and one for the 11:00 p.m. shift. (S.R.R. pp. 146–149). These positions were posted on November 24, 1989. Somerset decided that the 3:00 p.m. shift position would be considered a vacancy and would be filled by use of the Civil Service List. It was also decided that the 11:00 p.m. shift position would be a new position filled by the relocation of an existing Somerset position with the method of selection being "promotion without examination." (S.R.R. pp. 68–70, 78).

■ Ms. Nosko was not required to submit a new application for the 3:00 p.m. shift position but was required, and did, timely file an application for the 11:00 p.m. shift position. On December 19, 1989, Ms. Nosko was interviewed for both positions. By letter dated January 18, 1990, Somerset notified Ms. Nosko that she had not been selected for either of the RNS positions. (S.R.R. p. 143). Ms. Nosko filed an appeal with the Commission challenging her non-selection for promotion to the RNS position on the 11:00 p.m. shift.[1] Following a hearing, the Commission unani-

1. Ms. Nosko did not appeal her non-selection for promotion to the RNS position on the 3:00 p.m. shift. The 3:00 p.m. shift position was awarded to Mr. Wayne Hillegas who was selected from the Civil Service List. (S.R.R. p. 163).

mously dismissed Ms. Nosko's appeal. (S.R.R. pp. 167–170). Ms. Nosko now appeals the Commission's Order.[2]

■ Ms. Nosko contends that Somerset violated Section 905.1 of the Civil Service Act (Act)[3] by discriminating against her in promotion because of non-merit factors. She argues that there was procedural discrimination, or a technical violation, because the Commission erred in certifying the employee ultimately selected, Ms. Georgeann Carnevali, as a proper candidate for the RNS position. Ms. Nosko argues that the option of "promotion without examination" requires that the candidate "complete his or her probationary period in the next lower position" and that Ms. Carnevali does not qualify under these requirements.[4]

■ An employee who is appealing her non-selection for promotion may do so only on the basis of discrimination as provided by Section 905.1 of the Act. *Keim v. Pennsylvania Department of Health*, 117 Pa.Commonwealth Ct. 452, 543 A.2d 1261 (1988); *Pronko v. Pennsylvania Department of Revenue*, 114 Pa.Commonwealth Ct. 428, 539 A.2d 456 (1988). Section 905.1 of the Act provides:

> *No officer or employe* of the Commonwealth *shall discriminate against any person in* recruitment, examination, appointment, training, *promotion,* retention or any other personnel action *with respect to the classified service because of* political or religious opinions or affil-

**2.** Our scope of review over decisions of the State Civil Service Commission is limited to determining whether constitutional rights have been violated, an error of law has been committed, and whether the Commission's essential findings of fact are unsupported by substantial evidence. *Balas v. Department of Public Welfare,* 128 Pa.Commonwealth Ct. 205, 563 A.2d 219 (1989).

**3.** Act of August 5, 1941, P.L. 752, *as amended,* 71 P.S. § 741.905a.

**4.** There is no dispute that Ms. Nosko was eligible for the RNS position since she held the position of RN2 since August of 1988, which was the next lower position, and had completed her probationary period.

iations [,] because of labor union affiliations or because of race, national origin or *other non-merit factors.*

71 P.S. § 741.905a (emphasis added).

▰ The burden of prosecuting a discrimination appeal under the Act rests with the employee. *Allegheny County Health Department v. Bandyk,* 117 Pa.Commonwealth Ct. 275, 280 n. 8, 544 A.2d 527, 531 n. 8 (1988); *Keim v. Pennsylvania Department of Health;* 4 Pa.Code § 105.16(a). "Discrimination cannot be inferred; there must be affirmative factual support to sustain the allegations." *Keim v. Pennsylvania Department of Health,* 117 Pa.Commonwealth Ct. at 457, 543 A.2d at 1264; *See also Tempero v. Department of Environmental Resources,* 44 Pa.Commonwealth Ct. 235, 403 A.2d 226 (1979).

▰ This Court has held that proof of a technical violation of the Act constitutes discrimination *per se* under Section 905.1 of the Act. *Pronko v. Pennsylvania Department of Revenue,* 114 Pa.Commonwealth Ct. at 439, 539 A.2d at 462; *See also Allegheny County Health Department.* Moreover, where a technical violation of the Act constitutes the alleged discrimination, no showing of intent is required. *Allegheny County Health Department; Pronko.* The reason for such a holding is that often what has occurred is an administrative error or mistake, and thus intent to discriminate is frequently non-existent. *Allegheny County Health Department; Pronko.*

In addition, "in order to gain some type of relief there must be evidence that the complaining individual was in fact, harmed because of the technical non-compliance with the Act *or* evidence that because of the particular nature of the procedural impropriety [the individual] *could have* been harmed but there is no way to prove that for certain." *Pronko,* 114 Pa.Commonwealth Ct. at 439, 539 A.2d at 462 (emphasis in original); *See also Allegheny County Health Department.* Thus, Ms. Nosko need only show a technical

violation of the Act and that she was, or could have been, harmed by such non-compliance with the Act.[5]

Ms. Nosko contends that a technical violation of the Act occurred when the Commission improperly placed Ms. Carnevali's name on the Certification of Eligibles list. (S.R.R. p. 164). Ms. Nosko contends that such procedural discrimination took place because the Commission improperly took into consideration Ms. Carnevali's prior employment as a Psychiatric Nurse Two (PN2). She argues that at the time of her application, Ms. Carnevali was only a RN2 for one month and thus had not completed her probationary period. Ms. Nosko further argues that Ms. Carnevali's prior employment as PN2 is not within the next lower class as is a RN2, and therefore cannot be properly considered.

"The fundamental controlling premise underlying employment with the classified service is, as the Civil Service Act instructs, that the merit concept prevails." *Magnelli v. Pennsylvania Liquor Control Board,* 47 Pa.Commonwealth Ct. 597, 601, 408 A.2d 904, 906 (1979), *cert. denied,* 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980). The merit "concept requires 'personnel actions' of the Commonwealth to be based upon merit criteria relevant to the proper execution of the employee's duties. The criteria must be job-related and in some logical and rational manner touch upon competency and ability." *Magnelli,* 47 Pa.Commonwealth Ct. at 601, 408 A.2d at 906 (quoting *Department of Transportation v. Desikachar,* 22 Pa.Commonwealth Ct. 507, 508–509, 349 A.2d 796, 797 (1976); *See also Balas v. Department of Public Welfare,* 128 Pa.Commonwealth Ct. 205, 214, 563 A.2d 219, 223 (1989).

5. In her brief, Ms. Nosko argues that this Court should look at their respective qualifications, citing *Lynch v. Department of Public Welfare,* 30 Pa.Commonwealth Ct. 235, 373 A.2d 469 (1977), where this Court held that intent to discriminate may be proven by showing that the appointing authority promoted a less qualified applicant. However, as stated in *Allegheny County Health Department* and *Pronko,* in this type of case, intent to discriminate need not be shown but only a technical violation of the Act and the resulting harm.

■ The Commission's Management Directive 580.19 announced the current policy, requirements and procedures for promoting employees in the classified service without examination. (Respondent's Brief Addendum A). As a properly issued directive, it has the force and effect of law. *Keim v. Pennsylvania Department of Health.* Since Section 2 of Directive 580.19 implements Sections 501 and 601 of the Act,[6] a technical violation of the Directive is equivalent to a technical violation of the Act. *See Allegheny County Health Department; Bellew v. State Civil Service Commission,* 117 Pa.Commonwealth Ct. 447, 543 A.2d 1266 (1988).

Section 2 of the Directive provides that an employee seeking promotion without examination must:

(1) *have had regular status in the next lower position;* and (2) meet the minimum requirements for the higher position; and (3) receive the unqualified recommendations of both the immediate supervisor and the appointing authority.

(Respondent's Brief Addendum A) (emphasis added); *Accord* 71 P.S. § 741.501.

"Next lower position" is defined in Section 3(e) of the Directive as being a position in:

(1) the next lower class in the same class series; or

(2) a lower class level for which the appointing authority can establish a *logical occupational, functional, or career developmental relationship to the higher position;* or

(3) a lower level class for which the appointing authority can demonstrate a *clear linkage between most of the required knowledges [sic], skills, and abilities with those needed for the higher position.*

(Respondent's Brief Addendum A) (emphasis added).

Section 3(g) of the Act defines "class" as:

a *group of positions* in the classified service which are sufficiently similar in respect to the *duties and responsi-*

---

6. 71 P.S. §§ 741.501, 741.601.

*bilities* thereof that the *same descriptive title* may be used for each of such positions, the *same requirements as to experience, knowledge and ability are demanded of incumbents, the same tests of fitness* may be used to choose qualified appointees, and the *same schedule of compensation* may be made to apply with fairness under *like working conditions.*

71 P.S. § 741.3(g).

Section 601 of the Act requires the Commission to certify to the appointing authority the names of the three eligibles willing to accept appointment who are highest on the appropriate promotion list. 71 P.S. § 741.601. The Commission, by placing Ms. Carnevali's name on the Certification of Eligibles, determined that she met the criteria established under Directive 580.19 and the Act. Since Somerset admits that Ms. Carnevali was still on probation at her RN2 position, the Commission took into consideration her prior experience as a PN2 in order to qualify her as eligible.

Ms. Carnevali held the position of PN2 from April, 1986, to July, 1988, a period of two years and three months. (S.R.R. pp. 42, 45, 47). In July of 1988, she took a voluntary demotion to PN1 in order to change shifts. (S.R.R. pp. 54–55). In October of 1989, Ms. Carnevali took a position of RN2 which she held at the time she applied for the RNS position one month later. Thus, the issue becomes whether Ms. Carnevali's service as a PN2 can properly be classified as "a lower level class for which the appointing authority can establish a logical occupational, functional, or career development relationship"; or "a clear linkage between most of the required knowledges, skills, and abilities with those needed for the higher position." *See* Directive No. 580.19(2) and (3).

In support of her contentions, Ms. Nosko points out that on March 29, 1989, the Governor and his Executive Board promulgated Executive Board Amendment (EBA) No. 537. (S.R.R. p. 155). This amendment revised the compensation plan and employment titles for certain employees of the Commonwealth. The amendment changed the position title

and pay range of PN2 to that of an RN2 effective March 29, 1989. (S.R.R. p. 155). In fact, the amendment made all psychiatric nurse positions registered nurse positions. (S.R.R. pp. 155–156). However, the amendment did not state that the change from PN2 to RN2 should be applied retroactively, a fact Ms. Nosko argues supports her contention that the Commission erred in considering Ms. Carnevali's prior service.

We do not find, however, that EBA No. 537 precludes the Commission from considering Ms. Carnevali's prior PN2 service. As provided by M.D. No. 580.19, Somerset, as appointing authority, may submit to the Commission names of persons it believes have satisfied the "next lower class" requirement by service in a lower level class with a logical occupational, functional, or career development relationship, or a clear link between the required knowledge, skill and ability necessary for the higher position. The Commission by placing Ms. Carnevali's name on the list of eligibles agreed with Somerset that her prior service as a PN2 fell within the requirement established by the Act and M.D. No. 580.19.

This Court has held that as an administrative agency, the Commission is regarded as an expert on matters within its own jurisdiction. *Pronko v. Pennsylvania Department of Revenue.* Thus, the Commission is in the best position to determine whether certain service qualifies an employee for promotion, not this Court. The fact that the changes made by EBA No. 537 do not apply retroactively does not diminish this finding. In fact, it adds credence to the finding the PN2 position was essentially the same as the RN2 position and EBA No. 537 merely recognized this fact since it only changed the title and pay range and not the job requirements.

Moreover, Ms. Nosko does not present any evidence that the duties and responsibilities of, or the skills and knowledge necessary for, the PN2 position were substantially different from those of the RN2 position. As such, we will not disturb the Commissioner's finding that Ms. Carnevali

was qualified and eligible for promotion to the RNS position. Therefore, we find no procedural error and thus no discrimination under Section 905.1 of the Act.

Accordingly, we will affirm the Order of the Commission.

## ORDER

AND NOW, this 29th day of April, 1991, the Order of the State Civil Service Commission dated October 3, 1990 is affirmed.