Constance G. MASNERI, Petitioner,

v.

**STATE CIVIL SERVICE COMMISSION (WESTERN CENTER, DEPARTMENT OF PUBLIC WELFARE), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 15, 1998.
Decided May 28, 1998.

rather than a public one. *See Gribble v. Department of Corrections,* 711 A.2d 593 (Pa.Cmwlth. 1998).

Tamora L. Reese, California, for petitioner.

Jason W. Manne, Asst. Counsel, Pittsburgh, for respondent.

Before COLINS, President Judge, and McGINLEY, SMITH, PELLEGRINI, FRIEDMAN, KELLEY and LEADBETTER, JJ.

KELLEY, Judge.

Constance G. Masneri appeals from the order of the State Civil Service Commission (commission) upholding her furlough from her position as Director of Program Services with the Western Center, Department of Public Welfare (department). We affirm.

The commission made the following relevant findings of fact:

1. By letter dated August 10, 1995, [Masneri] was furloughed from her position as Director of Program Services, regular status, effective September 8, 1995.

* * *

3. [Masneri] was employed as Director of Program Services from July 6, 1992, to September 8, 1995, the date of her furlough. N.T.[1] pp. 54, 56. [Masneri] was the only individual employed in the Director of Program Services classification. N.T. pp. 36.

4. A "Census Report" dated July 1, 1993, indicated that 322 people were residing at the facility [operated by

the department]. N.T. pp. 18–19 ... A "Census Report" dated July 1, 1995, indicated that 185 people were residing at the facility. N.T. pp. 18–19.

5. As a result of the decline in census, Michael Stauffer, Director of the Bureau of Direct Program Operations, directed Edward Sadosky, Facility Director, to undertake a reorganization of the facility and to prepare a list of positions to be furloughed. N.T. pp. 20–27, 45.

6. Sadosky reviewed the "top management levels of the facility" and compared them "with other facilities of similar size." N.T. pp. 20–21. Sadosky determined that "the facility was top heavy in top management." N.T. p. 21.

7. There were five top level managers at the facility, including Sadosky. Sadosky recommended that one of the top management level positions be furloughed. N.T. pp. 21–23, 28.

8. Sadosky "looked at each position in terms of the longevity of the facility and how the facility would be in the future if each one of those positions was eliminated." N.T. p. 22.

9. Sadosky was "able to reshuffle the organizational structure of the facility to accommodate the loss of Director of Program Services position." N.T. pp. 23.

10. Sadosky determined that [Masneri]'s position was "the most expendable" since there were "supervisors and managers in most of th[e] programmatic functions", and "the supervision in those areas could be shifted into other areas ..." N.T. p. 25.

Commission Adjudication, pp. 1–4.

As a result of her furlough from her position with the department, on September 1, 1995, Masneri filed an appeal with the commission. In her appeal, Masneri alleged that she had been furloughed as a result of "tradi-

---

1. "N.T." refers to the notes of testimony of the hearing conducted before the commission on

February 29, 1996.

tional" discrimination on the basis of her gender in violation of the Civil Service Act (Act).[2,3]

On February 29, 1996, a public hearing on the matter was conducted before the commission. On June 21, 1996, the commission issued an adjudication and order dismissing Masneri's appeal, determining that the department had met its burden of proving that Masneri's furlough was based on a lack of work. The commission also determined that Masneri had failed to present sufficient evidence that the department furloughed her based on her sex. The instant appeal followed.

The sole claim raised by Masneri in this appeal is that the commission erred in determining that she had not been furloughed as a result of sexual discrimination.

We initially note that this court's scope of review of a decision by the commission is limited to determining whether there has been a violation of constitutional rights, whether errors of law have been committed, and whether necessary findings of fact are supported by substantial evidence. *Nosko v. Somerset State Hospital*, 139 Pa.Cmwlth. 367, 590 A.2d 844 (1991). Substantial evidence is any relevant evidence that a reasonable mind might consider adequate to support a conclusion. *Mihok v. Department of Public Welfare*, 147 Pa.Cmwlth. 344, 607 A.2d 846 (1992).

In civil service cases, the commission is the sole fact finder. *Western Center, De-partment of Public Welfare v. Sanders,* 102 Pa.Cmwlth. 426, 518 A.2d 878 (1986). Accordingly, resolution of evidentiary conflicts and determinations as to witness credibility are within the exclusive province of the commission. *Id.* This court will not substitute its judgment for that of the fact finder. *Western Center, Department of Public Welfare v. Hoon,* 143 Pa.Cmwlth. 212, 598 A.2d 1042 (1991).

Regarding Masneri's claim that she was furloughed as a result of sexual discrimination, we note that when a civil service employee alleges discrimination in a personnel action, that employee has the burden of going forward with evidence to support such charges. *Harper v. Department of Public Welfare,* 123 Pa.Cmwlth. 340, 553 A.2d 521 (1989). Discrimination cannot be inferred by the commission; rather, there must be some affirmative support adduced to sustain the allegations of discrimination. *Id.*

We also note the inherent fairness in subjecting those who are alleging traditional employment discrimination to a uniform, yet flexible standard of proof when possible. *Henderson v. Office of the Budget,* 126 Pa.Cmwlth. 607, 560 A.2d 859 (1989), petition for allowance of appeal denied, 524 Pa. 633, 574 A.2d 73 (1990). The standard of proof to be applied to cases alleging traditional forms of discrimination may be summarized as follows:

**2.** Act of August 5, 1941, P.L. 752, *as amended,* 71 P.S. §§ 741.1—741.1005, *added by* the Act of August 27, 1963, P.L. 1257. Section 905.1 of the Act provides that "[n]o officer or employe of the Commonwealth shall discriminate against any person in ... retention or any other personnel action with respect to the classified service because of political or religious opinions or affiliations because of labor union affiliations or because of race, national origin or other non-merit factors." 71 P.S. § 741.905a.

We note that Masneri's appeal to the commission was filed pursuant to section 951(a) and (b) of the Act, 71 P.S. § 741.951(a) and (b). Section 951(a) provides that any regular employee in the classified service who is furloughed in violation of the Act may appeal in writing to the commission within twenty calendar days of receipt of notice of the action from the appointing authority. 71 P.S. § 741.951(a). Section 951(b) provides that any person who is aggrieved by an alleged violation of section 905.1 of the Act may appeal in writing to the commission within twenty calendar days of the alleged violation. 71 P.S. § 741.951(b). Although Masneri initiated the instant appeal under both subsections of the Act, we have previously noted that traditional forms of discrimination in the context of a furlough are to be appealed under section 951(b). *Pronko v. Department of Revenue,* 114 Pa.Cmwlth. 428, 539 A.2d 456, 462 (1988).

**3.** The two general categories of discrimination which are appealable to the commission were described by this court in *Pronko.* "Traditional" forms of discrimination focus upon such factors as race, sex or age. *Id.,* 539 A.2d at 462. "Technical" discrimination involves a violation of procedures required pursuant to the Act or related Rules. *Id.*

If the plaintiff produces sufficient evidence that, if believed and otherwise unexplained, indicates that more likely than not discrimination has occurred, the defendant must be heard in response. Absent a response, the 'presumption' of discrimination arising from the plaintiff's *prima facie* case stands determinative of the factual issue of the case. In other words, if the employer rests without producing evidence, the plaintiff must prevail if he or she has produced sufficient evidence to make out a *prima facie* case. If, however, the defendant offers a non-discriminatory explanation for the dismissal, the presumption drops from the case. As in any other civil litigation, the issue is joined, and the entire body of evidence produced by each side stands before the tribunal to be evaluated according to the preponderance standard: Has the plaintiff proven discrimination by a preponderance of the evidence? Stated otherwise, once the defendant offers evidence from which the trier of fact could rationally conclude that the decision was not discriminatorily motivated, the trier of fact must then 'decide which party's explanation of the employer's motivation it believes.' The plaintiff is, of course, free to present evidence and argument that the explanation offered by the employer is not worthy of belief or is otherwise inadequate in order to persuade the tribunal that her evidence does preponderate to prove discrimination. She is not, however, entitled to be aided by a presumption of discrimination against which the employer's proof must 'measure up'.

*Henderson,* 560 A.2d at 863, *quoting Allegheny Housing Rehabilitation Corp. v. Pennsylvania Human Relations Commission,* 516 Pa. 124, 131, 532 A.2d 315, 319 (1987).

In support of her contention that her furlough was based on non-merit, discriminatory factors, Masneri proffers four examples of discrimination which had occurred during her tenure of employment with the department. She first submits that in July of 1993, during her employment as Director of Program Services, Sadosky extended her probationary period while granting regular status to another male employee who had worked under Sadosky for the same period of time.

However, the commission made the following factual determination regarding Masneri's claim:

Sadosky, however, credibly testified that he extended [Masneri's] probationary period because she "was on ... what was called a 'working test period', and the extent of involvement in terms of completing that working test period was such that [he] didn't feel [he] could adequately assess her performance without giving an extension and making that determination at some point later." N.T. p. 146. Sadosky explained that Kuppelweiser, on the other hand, "was not into that same situation, because Mr. Kuppelweiser ... had previously worked in the State system, so there was a history there, in terms of State work." N.T. p. 146.

Commission Adjudication, p. 9.

Masneri next claims that she had submitted a request for vacation leave in August of 1994, and Sadosky did not approve her request until October of 1994 because it was hunting season. Masneri claimed that the appropriate procedure required that her vacation leave request be granted or denied within three days of its submission.

However, the commission made the following factual determination regarding this claim:

Sadosky acknowledged that "the hunting issue did come up and it was discussed", but stated that "it was not the only issue". N.T. p. 148. Sadosky provided the following credible explanation for the delay in approving [Masneri's] leave request:

The leave request was around the Thanksgiving holiday and I conveyed to, I think most of the executive staff ... that when we talked about holiday leave approval, I would want to make sure that we were going to have adequate coverage. So, my intent was, at that point, to meet with each person to determine whether or not they anticipated being off around that holiday, which I, in fact, did do ... It did take me a little time to do that because of other issues ... I anticipate[d] being off because of hunting season, which I typically do, and

I also, from my knowledge of Mr. Tatarek, was aware that he would be submitting a request. He had informed me verbally. So, I was kind of looking at that and trying to work this out together with the idea that I would not deny Ms. Masneri's time, or anybody else's time. I would try to do whatever I can to give everybody the time that they wanted. N.T. pp. 148–149.

Commission Adjudication, pp. 9–10.

Masneri next submits that in September of 1994, she received a memorandum from Sadosky listing her work hours and lunch schedule, and required that she obtain written approval before she could make any changes to the assigned hours. She indicated that it was very common for the male executive staff to schedule their lunch break at a time that was conducive to the work they had on any given day.

However, the commission made the following factual determination regarding this claim:

Sadosky credibly testified that he sent the memorandum to [Masneri] "because of concerns that were expressed to [him]." N.T. p. 150. He stated that,

It seemed that particularly during the earlier morning portions of the shift there were periods of time that her time was unaccounted for ... the expectation generally was that, okay, there's a time frame where you work, and if you're going to deviate from that, yeah, there's some flexibility, but it appeared to me that there was kind of a consistent pattern developing where, particularly during the early portion of the shift, she was not present. And I directed that memo to her in order to address that issue. N.T. pp. 150–151.

Sadosky "did not identify a problem with any of the other executive staff members." N.T. p. 151. As to [Masneri's] lunch schedule, Sadosky testified that she was taking lunch "sometimes very late, [at] what would be considered [an] abnormal time." N.T. p. 166.

Commission Adjudication, pp. 10–11.

Finally, Masneri submits that she had suffered discrimination based on an objection which was made to her apparel. In particular, at the hearing Masneri testified that Stauffer had objected to the shoes she was wearing as they were "mid-height" heels.

However, the commission made the following factual determination regarding this claim:

Stauffer acknowledged objecting to [Masneri's] shoes, but provided a credible explanation for doing so. He stated, "We expect supervisors and managers to work and not walk around in clothes that would be inappropriate for the type of service they perform. So, if a resident of Western Center needs assistance, we would expect a manager, just like anybody else, to step in and provide assistance." N.T. p. 123. Stauffer explained that there is a problem with staff wearing heels because,

If a resident needs assistance, for example, or if a resident would be running out of a building, you would need stability more than what you would have with heels on. You'd want something a little more functional, so you, yourself, are not injured and you can assist the resident much better than if you would have heels on, for example. It's a safety issue to me, and I brought that to Mr. Sadosky's attention. N.T. p. 124.

Stauffer testified that he also objected to the male employes wearing neckties because of the safety issue. N.T. pp. 129–131.

Commission Adjudication, pp. 11–12.

As noted above, the commission is the sole fact finder, and the resolution of evidentiary conflicts and determinations as to witness credibility are within its exclusive province. *Sanders.* In this case, the commission was free to "decide which party's explanation of the employer's motivation it believe[d]." *Henderson,* 560 A.2d at 863. Thus, the commission was free to reject Masneri's testimony regarding the purported discrimination of the department, and to accept the department's evidence indicating that it fostered no discriminatory intent. On review, this court will not substitute its judgment for that of the commission in this regard. *Hoon.*

Moreover, in this case the commission specifically found as credible the evidence supporting the department's contention that Masneri was furloughed due to a lack of work at the Western Center. *See* Commission Adjudication, pp. 4–8. This is a valid basis for Masneri's furlough. *See* section 3(s) of the Act, 71 P.S. § 741.3(s); *Department of Public Welfare v. Magrath,* 14 Pa. Cmwlth. 257, 321 A.2d 403, 404 (1974) (When an employee's position is eliminated and the work formerly done by him either dispensed with or otherwise arranged for, there exists a condition of lack of work which justifies his termination).

Accordingly, the order of the commission is affirmed.

### ORDER

NOW, this 28th day of May, 1998, the order of the State Civil Service Commission, dated June 21, 1996, at No. 18895, is affirmed.

Dissenting opinion by SMITH, J.

SMITH, Judge, dissenting.

I respectfully dissent from the majority decision to affirm the order of the State Civil Service Commission (Commission) sustaining the furlough of Constance G. Masneri (Masneri) from her position at Western Center, Department of Public Welfare. Masneri maintains in her appeal to this Court that she presented sufficient evidence before the Commission to show that her furlough was the result of sex discrimination in violation of Section 905.1 of the Civil Service Act (Act) of August 5, 1941, P.L. 752, *as amended,* 71 P.S. § 741.905a, added by Section 25 of the Act of August 27, 1963, P.L. 1257. Because the Commission erred in its analysis of the evidence presented, I would remand this case to the Commission for it to conduct the appropriate evaluation of the evidence.

In *Commonwealth of Pennsylvania, Department of State v. Stecher,* 506 Pa. 203, 484 A.2d 755 (1984), the Supreme Court held that where the appointing authority determines that an employee's services are no longer needed because they can be more efficiently performed through a reassignment to other staff, for cost or operational purposes, a furlough may be made on the grounds of a lack of work. In addition, an appointing authority may satisfy its burden of proof in a discrimination challenge to its furlough decision by showing that the employee's position was eliminated due to organizational streamlining or restructuring and that management in good faith believed that the employee's work could be more efficiently performed without the eliminated position.

When an employee of the civil service alleges discrimination, the employee bears the burden of proof. *Price v. Luzerne/Wyoming Counties Area Agency On Aging,* 672 A.2d 409 (Pa.Cmwlth.1996), *appeal denied,* 547 Pa. 720, 688 A.2d 174 (1997). In *Commonwealth of Pennsylvania, Department of Health v. Nwoguwugwu,* 141 Pa.Cmwlth. 33, 594 A.2d 847 (1991), the Court reiterated the rule that alleged discrimination must be proved by some affirmative factual support to sustain the allegations. A uniform, yet flexible, standard of proof is utilized when reviewing claims of traditional discrimination, and it requires the complainant to produce sufficient credible and unrebutted evidence to establish a prima facie case of discrimination. *Henderson v. Commonwealth of Pennsylvania, Office of the Budget,* 126 Pa.Cmwlth. 607, 560 A.2d 859 (1989), *appeal denied,* 524 Pa. 633, 574 A.2d 73 (1990).

Where a prima facie case is established, the burden then shifts to the appointing authority to clearly demonstrate a nondiscriminatory reason for its action; if the allegations of discrimination are rebutted, the complainant may present evidence to show that the appointing authority's proffered reasons are mere pretext for its actions. *Id.*; *Nwoguwugwu.* Moreover, in *Allegheny Housing Rehabilitation Corp. v. Pennsylvania Human Relations Commission,* 516 Pa. 124, 532 A.2d 315 (1987), the Supreme Court explained that when the defendant offers a nondiscriminatory reason for its actions, the prima facie presumption of discrimination drops from the case, and the entire body of evidence presented shall be evaluated on a "preponderance of the evidence" standard. This standard requires proof that would lead a trier of fact to find that the existence of a contested

fact is more probable than its nonexistence, tantamount to a "more probable than not" standard. *South Hills Health System v. Department of Public Welfare*, 98 Pa.Cmwlth. 183, 510 A.2d 934 (1986); *see also Commonwealth v. $32,950 U.S. Currency*, 160 Pa. Cmwlth. 58, 634 A.2d 697 (1993), *appeal denied sub. nom., Commonwealth v. Friel*, 538 Pa. 637, 647 A.2d 512 (1994). This standard is not synonymous with the "substantial evidence" standard applied by the Commission and accepted by this Court.

Masneri directs the Court's attention to several occurrences to support her claim of sex discrimination, and those occurrences are referenced in the majority opinion. Concisely put, the Commission obviously determined that Masneri presented a prima facie case of discrimination; when the Department's witnesses offered what they and the Commission believed to be non-discriminatory reasons for the Department's actions, the Commission should have evaluated the whole body of evidence on the preponderance of the evidence standard articulated by the Supreme Court. It did not do so. I recognize that this Court is precluded from reweighing the evidence and substituting its judicial discretion for that of the Commission. *Bowman v. Commonwealth of Pennsylvania, Department of Environmental Resources*, 549 Pa. 65, 700 A.2d 427 (1997). However, there was no discussion by the Commission, as it has provided in other cases, of whether Masneri satisfied her initial burden of proving a prima facie case of discrimination; nor was there discussion of the preponderance of the evidence standard applicable to the Commission's evaluation of the evidence. Because the Commission erred in its analysis of the evidence, this case should be remanded to the Commission to conduct an evaluation of the evidence consistent with the standard of proof previously articulated by the courts.