IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lynn A. Van Tassel,               :
              Petitioner        :
                            :
        v.                :
                            :
State Civil Service Commission    :
(Department of Human Services),   :   No. 437 C.D. 2017
              Respondent       :   Submitted: August 4, 2017


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
              HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE JOSEPH M. COSGROVE, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE COSGROVE             FILED: December 20, 2017

       Lynn A. Van Tassel (Petitioner) petitions for review of a March 13, 2017 adjudication of the Pennsylvania State Civil Service Commission (Commission) which dismissed an appeal challenging her removal from the position of Income Maintenance Caseworker Supervisor with the Department of Human Services (DHS). Upon review, we affirm.

       Petitioner was promoted on April 20, 2015 to the position of Income Maintenance Caseworker Supervisor in DHS's Allegheny County Customer Service Center. As a condition of the position, Petitioner was required to satisfactorily complete a six-month probationary period. On September 14, 2015, Petitioner received an overall rating of unsatisfactory in her Employee Performance Review (EPR). Petitioner received a written reprimand for the unsatisfactory EPR on October 9, 2015. On November 13, 2015, Petitioner had a verbal confrontation with

her supervisor Sonya Farr (Farr), which took place in the presence of Farr's supervisor, Deborah Miller (Miller). A pre-disciplinary conference was held on December 17, 2015. Following this conference, Petitioner sent a letter to the DHS Human Resources (HR) department in which she referenced the November 13, 2015 incident and raised several issues which Petitioner believed deserved further investigation. On January 7, 2016, Petitioner received a written reprimand for the November 13, 2015 incident. A second unsatisfactory EPR was given to Petitioner on January 22, 2016. By letter dated February 19, 2016, Petitioner was notified of her removal from the position of Income Maintenance Caseworker Supervisor for failure to satisfactorily complete the six-month probationary period. Petitioner was subsequently returned to her prior position as an Income Maintenance Caseworker.

Petitioner appealed to the Commission, arguing DHS discriminated against her when it removed her from the position of Income Maintenance Caseworker Supervisor and returned her to the position of Income Maintenance Caseworker. The alleged bases of discrimination were Petitioner's union affiliation, a disability, and other non-merit factors. Hearings were held on June 3, 2016 and July 14, 2016. In a decision issued March 13, 2017, the Commission sustained the decision to remove and return Petitioner and dismissed her appeal. This appeal[1] followed.

## Discussion

Petitioner sets forth five separate arguments in her brief which may be distilled into one essential issue – whether the decision of the Commission is

[1] The standard of review for an adjudication of the Commission is limited to a determination of whether constitutional rights have been violated, whether errors of law have been committed, or whether findings of the Commission are supported by substantial evidence. 2 Pa.C.S. § 704. Substantial evidence is any relevant evidence that a reasonable mind might consider adequate to support a conclusion. *Mihok v. Department of Public Welfare*, 607 A.2d 846 (Pa. Cmwlth. 1992).

supported by substantial evidence. Petitioner argues the factors used by DHS in disciplining her were pre-textual and not merit-based. Further, Petitioner maintains her demotion was both discriminatory and retaliatory in nature in violation of the Civil Service Act (Act).[2]

DHS responds that the Commission properly concluded Petitioner's removal from the supervisory position was the direct result of a number of legitimate, work-related issues and concerns and the removal action by DHS was not influenced in any way by Petitioner's labor union activities or disability.

Section 905.1 of the Act[3] provides that "[n]o officer or employe of the Commonwealth shall discriminate against any person in recruitment, examination, appointment, training, promotion, retention or any other personnel action with respect to the classified service because of political or religious opinions or affiliations because of union affiliations or because of race, national origin or other non-merit factors." 71 P.S. §741.905a. Traditional forms of discrimination focus upon such factors as race, sex, or age, *Masneri v. State Civil Service Commission (Department of Public Welfare)*, 712 A.2d 821, 823 n.3 (Pa. Cmwlth. 1998), and, obviously, disability. Procedural, or technical, discrimination involves a violation of procedures required pursuant to the Act or related Rules. *Id.*

The burden of proving disparate treatment rests with the person claiming it. *Daily v. State Civil Service Commission (Northampton County Area Agency on Aging)*, 30 A.3d 1235, 1239 (Pa. Cmwlth. 2011). Discrimination cannot be inferred; rather, there must be affirmative factual support to sustain the allegations. *Id.* The complainant must first make out a prima facie case of

---

[2] Act of August 5, 1941, P.L. 752, *as amended*, 71 P.S. §§ 741.1 – 741.1005.

[3] Added by the Act of August 27, 1963, P.L. 1257, 71 P.S. § 741.905a.

discrimination, which is accomplished by producing sufficient evidence which, if believed and otherwise unexplained, indicates that more likely than not discrimination has occurred. *Department of Health v. Nwogwugwu*, 594 A.2d 847, 850 (Pa. Cmwlth. 1991). When the complainant has established a prima facie case, a presumption of discrimination arises which, if not rebutted by the appointing authority, becomes determinative of the factual issue in the case. *Id.*

Petitioner's first EPR received in her position as an Income Maintenance Caseworker Supervisor covered the period from April 20, 2015, the date of her promotion, through July 20, 2015. (Certified Record (C.R.), Exhibit AP 7.) Petitioner received unsatisfactory ratings in the categories of Communications and Interpersonal Relations/Equal Employment Opportunity (EEO), and received an overall rating of unsatisfactory. *Id.* This EPR was written and signed by Farr and signed by Shawn Wessner, Farr's supervisor at the time. *Id.*

Farr testified at the June 3, 2016 hearing to the incidents which contributed to her conclusions that Petitioner performed her duties unsatisfactorily. Petitioner closed a client's cash assistance account without authorization. (Transcript of Testimony (T.T.), 6/3/2016, at 140.) After another client's debit card was stolen, Petitioner had a copy of the client's account transcript printed for the detective investigating the theft, which action constituted a breach of the client's confidential information. *Id.* at 143. Petitioner discussed confidential leave information with one of her subordinates within earshot of other staff. *Id.* at 146. Farr was required to speak to Petitioner on multiple occasions about confidentiality and Petitioner's failure to honor it. *Id.* at 148. Petitioner also improperly sought information about a caseworker who had applied for benefits with the County Assistance Office (CAO). *Id.* at 150. Regarding interpersonal relationships with

4

other staff and subordinates, Farr testified that Petitioner had a "tendency to interrupt" and she had received complaints about Petitioner pointing at the faces of trainees with her finger or pen. *Id.* at 145, 151. Petitioner would openly criticize management decisions and refer to caseworkers as her "minions." *Id.* at 153, 161-162.

The rating period for Petitioner's second EPR was from November 21, 2015 through January 21, 2016. (C.R., Exhibit AP 2.) Petitioner was found to need improvement in the areas of Job Knowledge/Skills, Initiative/Problem Solving, Interpersonal Relations/Equal Employment Opportunity (EEO), and Supervision/Management. *Id.* Petitioner was deemed unsatisfactory in the areas of Communication, and Work Habits. *Id.* These ratings resulted in Petitioner receiving an overall rating of unsatisfactory. *Id.*

Farr testified at length to her reasons for the ratings set forth in the second EPR. In regards to job knowledge, Petitioner reached out improperly to a caseworker with the CAO. (T.T., 6/3/16, at 97.) Contact with the CAO was to be made strictly through the staff assistant; however, Farr related there were several instances in which Petitioner initiated contact with someone other than the staff assistant. *Id.* at 97-99. Petitioner further provided incorrect information to the caseworker, which required additional work to correct. *Id.* at 100. In another instance, Petitioner improperly divulged confidential client information in violation of DHS policy. *Id.* at 103, 117-118.

Both Farr and Miller testified to the incident which took place November 13, 2015 resulting in Petitioner receiving a written reprimand and a negative rating in the second EPR. At the time of the incident, the office was going through a schedule change and Petitioner was asked to select a lunch period. (T.T.,

6/3/2016, at 106.) Petitioner became upset and left Farr's office. *Id.* at 108. Miller came to Farr's office and asked Petitioner to come in and discuss the matter further. *Id.* Petitioner became increasingly upset and Miller asked her to lower the volume of her voice out of concern others would hear. *Id.* at 109-110. At one point in the discussion, Petitioner stated she was "getting fucking screwed," and asked if she should "bend over." *Id.* at 113. Petitioner proceeded to turn around and bend over. *Id.* Miller's testimony regarding the incident corroborated that of Farr. *Id.* at 270-275.

Several employees were questioned about the incident and one caseworker provided a written statement that she was able to hear Petitioner speaking loudly and angrily. (C.R., Exhibit AP 13.) In response, Petitioner created a report of that caseworker's work activity during the approximate time during which the November 13, 2015 incident took place. (T.T., 6/3/2016, at 125-126.) The program Petitioner accessed was to be used strictly in connection with her duties as a supervisor and the caseworker in question was not one of Petitioner's subordinates. *Id.* at 127-128.

Farr testified that the primary reason for the overall rating of unsatisfactory was that, at that point in Petitioner's probation, Petitioner "didn't grasp" her job duties. *Id.* at 132. Petitioner continued to violate DHS policy despite having the merits of the policy explained to her. *Id.* While acknowledging that, having previously worked for the CAO, Petitioner brought knowledge to DHS that others did not have, Farr related that "a lot of that knowledge wasn't applied correctly." *Id.* at 135-136. Given the recurring issues, Farr did not believe Petitioner "would get it." *Id.* at 172.

Farr testified her assessment of Petitioner's performance was not influenced by Petitioner's union activity, any perceived disability of Petitioner,[4] or any other non-merit or non-work related factors. *Id.* at 175-176. Miller testified she did not believe Farr ever treated Petitioner differently because of her union affiliation or any perceived disability. *Id.* at 286. Miller reviewed the comments and ratings in the second EPR with Farr and agreed with Farr's conclusions that Petitioner was not likely to improve because of persistent issues. *Id.* at 281-282.

David Householder, an analyst with DHS's HR department, also testified. He related that probationary status is 180 days, but this period of time could be extended up to an additional 180 days. (T.T., 7/14/16, at 409.) Petitioner's probationary period was extended on two occasions to provide Petitioner additional opportunities to "demonstrate overall satisfactory performance." (C.R., Exhibits AA4, AA5.) If an employee received two unsatisfactory EPRs, the policy was to return that employee to her prior position. (T.T., 7/14/16, at 420.)

Petitioner called Robin Capers (Capers), an Income Maintenance Caseworker Supervisor with DHS, to testify on her behalf. When asked by Petitioner if she found Petitioner to be proficient, Capers responded that "for the most part you had answers…. But I'm not, you know, always going to say that they

---

[4] While Petitioner alleges in her Petition for Review that she was removed and returned from her probationary position after filing a request under the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101-12213, she does not develop this argument in her brief or cite to any evidence of record which suggests a correlation between her request and removal from the supervisory position. One of the issues Petitioner raised was a request for transfer closer to her home. (*See* T.T., 7/14/16, at 587) The right to be free from discrimination in the workplace based on disability is of fundamental importance and something this Court takes quite seriously. Further, in our world where communication and remote access are ubiquitous, location and reduced commute must be considered a reasonable disability accommodation. The question here, however, is whether Petitioner suffered a negative workplace response due to pursuit of an ADA claim, not whether that claim had merit (although even the Commission acknowledges that "it appears that there was some medical basis for [Petitioner's] request....")(Commission's Brief at 15). While we address the former here, the latter is a question for a forum other than this.

7

were the exact or correct answers. But, you know, you did have answers." (T.T., 6/3/2016, at 21-22.) Beth Ann Mikus (Mikus) also held the position of Income Maintenance Caseworker Supervisor. *Id.* at 520. Mikus testified she had held that position since 2007, had worked for the "State" for over twenty-seven years, and had been involved with the union "basically, from day one." *Id.* For the past five years, Mikus served as the chapter chair for the Service Employees International Union (SEIU) Local 668. *Id.* at 521. Mikus testified she did not believe there was sufficient documentation to support the negative ratings in Petitioner's EPRs. *Id.* at 537-538. Mikus further testified to the lack of training provided for the Income Maintenance Caseworker Supervisor position, but related it was "not anybody's fault except the fact that the budget was not passed…." *Id.* at 539-540.

Petitioner's testimony addressed the negative findings in her EPRs. She did not deny any allegations, but rather defended her actions. A correction made to a client's case was an attempt "to be a good steward of taxpayer dollars." (T.T., 7/14/16, at 575.) Petitioner printed the work log of another supervisor's subordinate because she wanted to demonstrate the employee could not have been present to hear the November 13, 2015 discussion between Petitioner, Miller, and Farr. *Id.* at 578. She admitted her use of the program was not an approved use, but analogized it to using a butter knife as a pry bar. *Id.* at 580. Petitioner did not deny the November 13, 2015 incident, but asserted that "[o]ther people have gotten counseled on a lot worse before they got to any discipline." *Id.* at 583. Petitioner did deny one incident of violating policy regarding confidential information because such information could be disclosed to business associates and the union constituted a business associate. *Id.* at 584. Petitioner contacted a caseworker for the CAO directly, rather than the staff assistant as directed, because "there was nobody for me to contact."

8

*Id.* at 612. She admitted she did not attempt to contact the staff assistant prior to reaching out to the caseworker. *Id.*

In its decision sustaining Petitioner's removal, the Commission addressed the allegations of discrimination and concluded no evidence was presented which supported a finding of either traditional or procedural discrimination. The record before us is replete with evidence supportive of the Commission's actions. For her part, Petitioner admitted to the behavior and actions which gave rise to the negative ratings in her EPRs and merely sought to justify her actions. In light of this, we are compelled to conclude that substantial evidence of record supports the Commission's decision.

For these reasons, the March 13, 2017 order of the Commission is affirmed.

_____
JOSEPH M. COSGROVE, Judge

9

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lynn A. Van Tassel,
              Petitioner          :
                                      :
       v.                        :
                                        :
State Civil Service Commission    :
(Department of Human Services)   :   No. 437 C.D. 2017
              Respondent    :

O R D E R

AND NOW, this 20th day of December, 2017, the March 13, 2017 order of the State Civil Service Commission is affirmed.

_____
JOSEPH M. COSGROVE, Judge