551 A.2d 364

Addie McFarland and Mother Goose Day Care Center, Inc., Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued September 13, 1988, before Judges CRAIG, BARRY and McGINLEY, sitting as a panel of three.

*Clyde W. Waite, Stief, Waite, Gross & Sagoskin,* for petitioners.

*Ruth O'Brien,* Assistant Counsel, with her, *John C. Fekety,* Assistant Counsel, for respondent.

OPINION BY JUDGE BARRY, December 8, 1988:

Mother Goose Day Care Center, Inc. (Mother Goose) and Addie McFarland, its Vice President and General Manager, appeal from an order of the Director of the Office of Hearings and Appeals (OHA) of the Department of Public Welfare (DPW) which affirmed orders of DPW's Deputy Secretary of Planning, Policy and Evaluation which refused to renew certificates of compliance for Mother Goose's childrens' day care centers in Morrisville and Penndel and imposed a civil penalty upon Mother Goose for failure to comply with Section 23.1 of the Child Protective Services Law, Act of July 1, 1985, P.L. 124, *as amended,* 11 P.S. §2223.1.

On September 12, 1986, employees of the Southeast Region Field Office of the Day Care Division of DPW's Office of Planning, Policy and Evaluation (OPPE) conducted unannounced inspections of the above mentioned children's day care centers. During these inspections various violations of DPW regulations were found. The violations were noted on Licensing and Inspection Summary forms prepared for each center (LIS forms), which were mailed to Ms. McFarland. Mother Goose was given a period of two weeks from the date of the inspection to submit plans of correction for the

violations set forth in those forms. When it did not submit the requested plans within that time period, the Day Care Division of OPPE gave it an additional ten days to submit the plans. When Mother Goose still did not submit the requested plans of correction, the Day Care Division of OPPE notified it in writing that, because the requested plans of correction had not been received, renewal of the certificates of compliance for the two centers could not be recommended.

Three months after the issuance of this notice, the Southeast Region Field Office of the Day Care Division of OPPE was notified by Ms. McFarland that she had never received any of the letters and accompanying copies of LIS forms regarding the September 12, 1986 inspections. A set of copies of those forms, together with an accompanying cover letter, was sent to Ms. McFarland on two more occasions thereafter. Mother Goose was given eighteen days after the first of these mailings within which to file the requested plans of correction. It did not, however, file those plans within that time period. In fact, the second set of the LIS forms and the accompanying cover letter, which was sent by certified mail, return receipt requested, was returned as unclaimed.

Following the passage of the final deadline date that had been established for the filing of the requested plans of correction, DPW's Deputy Secretary for OPPE sent Ms. McFarland an order to show cause why Mother Goose should not be subjected to a civil penalty for willful violation of Section 23.1 of the Law, pursuant to 55 Pa. Code §3490.16. Later, this same official notified Ms. McFarland in writing of DPW's decision to refuse to renew the certificates of compliance for Mother Goose's two centers. The basis for this decision was (1) Mother Goose's failure to comply with applicable day

care regulations[1] and (2) DPW's determination that Ms. McFarland was not a responsible person.[2] Ms. McFarland first filed an appeal in Mother Goose's name and her own from the order to show cause and later from the decision to refuse to renew certificates of compliance for the centers. After the latter appeal was filed, a plan of correction for the violations set forth in the September 12, 1986 LIS form pertaining to the Morrisville center was received by the Day Care Division of OPPE.[3]

Following three hearings on the two appeals, a hearing officer recommended that the decisions of DPW's Deputy Secretary for OPPE be affirmed. This recommendation was adopted by the Director of OHA by an order entered on December 23, 1987. Ms. McFarland then filed this appeal from that order.[4]

---

[1] The violations mentioned in the letter were: (a) failure to directly supervise children at all times (8A-151); (b) failure of staff members to meet qualifications for which they were employed (8A-92); (c) leaving aides alone with children (8A-90); (d) failure to have health appraisals available for all staff members (8A-175 and 227); and (e) failure to obtain Act 33 clearances for those staff members who needed them (11 P.S. §2219).

[2] This determination was rendered on the basis of information provided by the Office of Attorney General and Bucks County Police officials which indicated that staff members of Mother Goose had been instructed to alter or forge documents necessary to demonstrate compliance with day care regulations.

[3] A plan of correction for the violations set forth in the September 12, 1986 LIS form pertaining to the Penndel center was never received.

[4] A petition for reconsideration of the Director of OHA's decision was filed with the Secretary of DPW. That petition was not acted upon within the thirty day period for appealing the December 23, 1987 order of the Director of OHA. Thus the February 8, 1988 order of the Secretary of DPW which denied the request for reconsideration was a nullity.

In this appeal, petitioners first argue that the Department's refusal to renew the certificates of compliance for Mother Goose's two day care centers is based upon the unauthorized action of a non-managerial employee of Mother Goose and that, therefore, it is improper. This argument is premised upon the petitioners' belief that the hearing officer should have accepted certain testimony by Ms. McFarland and a witness who had formerly been employed by Mother Goose as a secretary and who is identified on the record only as "Witness No. 2". This testimony had been offered in an attempt to show that Ms. McFarland, on September 22, 1986, had prepared plans of correction for the violations set forth in the September 12, 1986 LIS forms and had placed them in a tray on her desk to be mailed and that Witness No. 2, without Ms. McFarland's knowledge or authorization, removed them from the tray and kept them to prevent discovery of removal of certain documents from Mother Goose's personnel files which she had forged without Ms. McFarland's knowledge or authorization. As fact finder, however, it was the role of the hearing officer to assess the credibility of each witness and to give whatever weight she determined appropriate to their testimony. *Gomez v. Department of Public Welfare*, 111 Pa. Commonwealth Ct. 234, 533 A.2d 826 (1987). Here, the hearing officer determined that the proffered testimony was not credible.[5] This Court is unable to disturb such determinations upon appeal.

In reviewing the record in this case, we find there is substantial evidence to support a finding that Mother

[5] "Finally, the appellant argues that a plan of correction in response to the LIS of 9/12/86 was prepared and placed for outgoing mail preportedly [sic] intercepted without authority by an employee unknowingly by the appellant . . . [T]his hearing officer does not find that [this theory] should be [adopted]. . . ." RR. 174a.

Goose never submitted a plan of correction for the Penndel center and that, at the time the Deputy Secretary of OPPE notified Ms. McFarland in writing of her decision to refuse issuance of the certificates of compliance, no plan of correction had been submitted for the Morrisville center. Accordingly, we conclude that DPW properly refused to renew the certificates of compliance for Mother Goose's Morrisville and Penndel centers pursuant to 55 Pa. Code §20.71(a)(3).[6] This Court has held that failure to submit a plan of correction until after written notification of the decision to revoke, or not to renew, a certificate of compliance because of the failure to timely submit such a plan, by itself constitutes ground for refusal to issue or renew a certificate of compliance. *See Pine Haven Residential Care Home v. Department of Public Welfare,* 99 Pa. Commonwealth Ct. 1, 5, 512 A.2d 59, 61 (1986).

At the time the order to show cause why a civil penalty should not be imposed upon Mother Goose for failure to comply with Section 23.1 of the Child Protective Services Law was issued, that statutory provision required administrators of child care service facilities to obtain criminal record clearances and child abuse history clearances before they hired employees who would

---

[6] We note that the hearing officer, in addressing the question of whether the provider was guilty of such an omission, framed the issue in terms of whether the provider had *willfully* failed to file plans of correction for the violations set forth in those forms. The Department asserts that the regulation upon which the Deputy Secretary of OPPE relied in refusing to renew the certificates of compliance does not require that it be shown that the failure to file a plan of correction was willful. We agree. 55 Pa. Code §20.71(a)(3) provides:

The Department may deny, refuse to renew, or revoke a certificate of compliance for any of the following:

(3) failure to submit an acceptable plan to correct noncompliance items.

have direct contact with children. Two categories of employees were exempt from this requirement. One included persons who had been hired prior to the effective date of Section 23.1, 11 P.S. §2223.1(1). The second is the category defined in subsection (m) of Section 23.1, 11 P.S. §2223.1(m), which reads as follows:

The requirements of this section shall not apply to employees of child care services who meet all the following requirements:

(1) The employees are under 21 years of age.

(2) They are employed for periods of 90 days or less. .

(3) They are a part of a job development and/or job training program funded in whole or in part by public or private sources. Once employment of a person who meets these conditions extends beyond 90 days, all requirements of this section shall take effect.[7]

In the present case, DPW, pursuant to 55 Pa. Code §3490.16,[8] sought to impose a fine upon Mother Goose for willfully violating Section 23.1 by failing to obtain the required criminal history information and/or certification of child abuse history concerning one group supervisor, one assistant group supervisor and five aides on the staffs of its two centers prior to hiring them. To

---

[7] By the Act of November 6, 1987, P.L. 391, subsection (o) was added to Section 23.1. That subsection, which took effect on January 5, 1988, changed the Law insofar as the operator of the day care center can now hire an employee without first having been provided the required clearances as long as certain conditions are met.

[8] This regulation was adopted pursuant to subsection (g)(2) of Section 23.1, 11 P.S. §2223.1(g)(2) which calls for the promulgation of regulations setting forth sanctions for administrators who *willfully* hire applicants in violation of either Section 23.1 or the regulations promulgated thereunder.

establish the alleged violation, DPW presented the testimony of Corporal Richard Crimmel of the Pennsylvania State Police. He testified that the records of the State Police indicated that no application had ever been made for reports of criminal history information regarding six of the seven employees involved. It also presented the testimony of Sherry Emsminger, a DPW employee who was employed in the Verification Unit of Child Line. Her testimony established that DPW records show that two of the employees in question had never applied for a certification of child abuse history and that four of them applied for such certifications only after they had been hired. In the opinion of this Court, this evidence constitutes substantial evidence to support a finding that Mother Goose had willfully violated Section 23.1.

The petitioners argue that the opposite conclusion should be reached. They would have us conclude that the seven employees in question fall under the category of employees who, under subsection (m) of Section 23.1, are exempt from the requirements established by subsections (b) and (c) of that section. In reviewing the record, however, we find that the only evidence relevant to the claim of an exemption under subsection (m) was Ms. McFarland's testimony that she had informed John Bevivino from the Southeast Region Field Office of the Day Care Division of OPPE that "some of the names" that appeared on a list of persons who were alleged to have been hired in violation of Section 23.1 that was submitted by him on July 21, 1986 were persons who were under twenty-one years of age, employed for less than ninety days, and were on job training programs. Mr. Bevivino, upon being so informed, allegedly said that he would check this claim out and let her know whether in fact they were exempt but never did. Even if the hearing officer had chosen to credit this testimony,

it would not have constituted substantial evidence to support a finding that the seven employees in question were, under subsection (m) of Section 23.1, exempt from the requirements of subsections (b) and (c), particularly when the identity of the individuals discussed was not disclosed.

Petitioners argue that the Department, as part of its burden to prove that Mother Goose had willfully violated Section 23.1, was required to prove that the seven employees did not fall under the category of those who under subsection (m) of Section 23.1, are exempt from *the requirements established by subsections (b) and (c).* We disagree. Section 23.1, subsection (m) establishes an exception to the rule which requires all prospective employees of child care services to submit the clearances required by the Law to their prospective employers prior to employment. DPW cannot be said to have the burden of proving negatively that a child day care center operator cited for willfully violating Section 23.1 does not come within that exception. *See Commonwealth v. Harrison,* 137 Pa. Superior Ct. 279, 8 A.2d 733 (1939). Rather, the operator of the day care center bears the burden of proving the exempt status of its staff members.

For these reasons, the order of the Director of OHA is affirmed.

## ORDER

Now, December 8, 1988, the order of the Director of the Office of Hearings and Appeals of the Department of Public Welfare dated December 23, 1987, at File Nos. 18-87-003, 18-87-006 and 18-86-007, is hereby affirmed.

Judge MACPHAIL did not participate in the decision in this case.