**KC EQUITIES d/b/a Little Steps Day Care, Petitioner**

v.

**DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 10, 2014.

Decided April 14, 2014.

Reargument Denied May 28, 2014.

Publication Ordered June 30, 2014.

to impose these costs under sections 9754(c)(11) and (c)(13).

Megan A. Wiest, Assistant Counsel, Wilkes–Barre, for respondent.

BEFORE: RENÉE COHN JUBELIRER, Judge, and ROBERT SIMPSON, Judge, and ROCHELLE S. FRIEDMAN, Senior Judge.

OPINION BY Judge SIMPSON.

KC Equities d/b/a Little Steps Day Care (Little Steps) petitions for review from an adjudication of the Pennsylvania Department of Public Welfare (DPW), Bureau of Hearings and Appeals (BHA). The adjudication upheld DPW's Office of Child Development and Early Learning's (OCDEL) decision to revoke Little Steps' certificate of compliance to operate a day care center (Certificate), and to refuse to grant a provisional certificate of compliance. OCDEL based its decision on violations discovered during two inspections.

Significantly, months before OCDEL conducted these inspections, DPW and Little Steps entered into a settlement agreement (Settlement). Under the Settlement, DPW retained the right to revoke the Certificate for any regulatory or statutory violations. Also under the Settlement, DPW retained the right to refuse to issue a provisional certificate if there was an unsatisfactory inspection.

Little Steps disputes BHA's adjudication on multiple grounds, both procedural and substantive. Primarily, it contends there were insufficient grounds to revoke its Certificate, and the revocation lacked proper authorization. Little Steps also asserts it was not bound by the Settlement because DPW did not abide by its terms. Finding no merit in Little Steps' challenges, we uphold DPW's revocation and denial of a provisional certificate.

## I. Background

George A. Michak, Lemoyne, for petitioner.

Little Steps operates a certified child day care center in Wilkes–Barre. As a

child day care center,[1] Little Steps is subject to the requirements in Article X of the Public Welfare Code (Code), 62 P.S. §§ 1001–1080, and 55 Pa.Code Chapters 20 and 3270.

In 2008, DPW advised Little Steps that it decided not to renew the Certificate as a result of deficiencies in staff-child ratio and child supervision. Little Steps litigated the non-renewal through the administrative process, unsuccessfully. After BHA adopted an administrative law judge's recommendation and denied its appeal, but before the time for seeking reconsideration lapsed, Little Steps and DPW reached a resolution.

Little Steps and DPW executed the Settlement in February 2010. Little Steps agreed to the Settlement, and additional supervision and potential sanctions thereunder. The Settlement was to remain in effect for two years.

The parties agreed that any violation of the terms of the Settlement or any applicable requirement shall be deemed a material breach, and may form the basis for revocation or refusal to renew Little Steps' Certificate. Importantly, the Settlement mandated Little Steps to perform certain remedial measures within 60 days of the effective date of the agreement. These included: (1) preparing written policies regarding staff-child ratio, measurement and use of indoor child care space, and supervision of children; and, (2) requiring all staff members to pledge comprehension and compliance with the polices in a signed employee statement maintained in their personnel files. Pursuant to the Settlement, these policies and the employee

statement were subject to DPW's approval.

In accordance with the Settlement, DPW agreed to issue Little Steps a provisional certificate of compliance provided that DPW was satisfied that Little Steps was in compliance with DPW regulations.[2] Specifically, the Settlement provides, with emphasis added:

*After* an on-site physical *inspection* of the facility is conducted, *the results of which are satisfactory* to the Department, the Department will issue [Little Steps] a first provisional certificate to operate a child day care center … for a period of six (6) months. *The on-site physical inspection will be conducted within four weeks of the execution date of the agreement and will be an announced inspection.*

Reproduced Record (R.R.) at 23a (Settlement).

OCDEL inspected Little Steps on two separate occasions after the Settlement: March 5, 2010 (March Inspection); and April 24, 2010 (April Inspection). OCDEL undertook the March Inspection within the four weeks prescribed by paragraph 3 of the Settlement, after providing notice to Little Steps. OCDEL undertook the April Inspection in response to a complaint it received. Therefore, the April Inspection was unannounced.

During both inspections, OCDEL noted violations of the Settlement, the Code, and DPW regulations. The investigators recorded their findings in two separate Licensing Inspection Summaries (LIS).

1. A "child day care center" is defined as "any premises operated for profit in which child day care is provided simultaneously for seven or more children who are not relatives of the operator, except such centers operated under social service auspices." Section 1001 of the

Public Welfare Code, Act of June 13, 1967, P.L. 31, *as amended,* 62 P.S. § 1001.

2. Little Steps continued to operate under its regular certificate of compliance at the time of the inspections in March and April of 2010.

During the March Inspection, DPW certification representative Kristin Moran (Moran) of OCDEL noted the following six deficiencies:

(1) Peeling paint on one wall in the toddler room;

(2) Mats used by children for napping were not labeled with their names;

(3) Lack of a thermometer in the refrigerator in the infant room;

(4) A child's record did not contain a signed parental consent for emergency medical care;

(5) Same record lacked a signed parental consent for first aid; and

(6) Same record lacked health insurance information or policy number.

R.R. at 46a–48a (March LIS).[3]

Between March and April 2010, Moran attempted to refer a request for training of Little Steps' staff to Community Services for Children, Inc. (CSC), a third-party provider of training services. CSC did not receive the initial referral, as it was not directed to the proper contact at CSC, Diane Milia (Milia). Moran made the proper referral for training to Milia on or about April 9, 2010. The training referral was necessary for Little Steps to meet one of its obligations under the Settlement (staff to receive additional training regarding child supervision).

Little Steps timely submitted a plan of correction as to the deficiencies noted in the March Inspection (March POC) by April 11, 2010.

While reviewing the March POC, Moran received a complaint about the staff-child ratios at Little Steps. According to the complaint, Little Steps had insufficient staff on weekends, and on a Saturday in April it had only one staff person to oversee 10 or more children.

As a result of that complaint, Moran conducted the unannounced April Inspection. During that inspection, she noted the following deficiencies:

(1) Violations of staff-child ratio, with two staff persons overseeing a group of 17 children, including 2 infants;

(2) Staff persons were not assigned specific groups of children;

(3) The 17 children were supervised in a room with a maximum capacity of 15 children; and

(4) Insufficient space for napping.

R.R. at 49a–52a (April LIS).[4]

Little Steps timely submitted a plan of correction to address these violations in May 2010 (April POC).

Based on the LIS from each inspection, and the referral of the inspectors, DPW never issued a provisional certificate of compliance.

---

**3.** These deficiencies violated DPW regulations in Title 55 Pa Code as follows: No. 1, Section 3270.77(a) (prohibiting peeled or damaged paint or plaster); No. 2, Section 3270.106a (rest equipment must be labeled for use by a specific child and used only by that child); No. 3, Section 3270.107 (requiring operational thermometer at a temperature of 45 degrees or below); Nos. (4) and (5), Section 3270.182 (child record requirements necessitating parental consents); and, No. 6, Section 3270.124 (requiring health insurance coverage/policy information).

**4.** These deficiencies violated DPW regulations as follows: No. 1, Sections 3270.51, 3270.52 (appropriate staff-child ratios; youngest child determines appropriate number of staff); No. 2, Section 3270.113(a)(1) (requiring supervision of specific children for each staff; requiring staff person to be physically present and accountable for specific children in his designated group); No. 3, Section 3270.61 (regarding maximum capacity for indoor child care space); and, No. 4, Section 3270.106(f) (requiring at least two feet of space on three sides of rest equipment while in use).

By letter dated June 4, 2010, signed by then-Acting Deputy Secretary Todd Klunk, DPW advised that, "after investigation, [DPW] has made a preliminary decision to REFUSE TO ISSUE a provisional certificate of compliance and REVOKES your regular certificate of compliance to operate a child care center...." R.R. at 17a–20a (Revocation Letter). The Revocation Letter noted that Little Steps committed material violations of the Settlement by failing to comply with DPW regulations. The Revocation Letter further stated DPW "was particularly concerned with your repeated non-compliance with [DPW] regulations regarding staff-child ratios; measurement and use of indoor child care space[;] and[,] for the supervision of children." R.R. at 17a (internal citations omitted).

Little Steps appealed the negative sanctions imposed under the Revocation Letter, which was assigned to Administrative Law Judge David A. Dudley, Esquire (ALJ).

Prior to the hearing, Little Steps served discovery requests on DPW, and sought a number of records and witness subpoenas. DPW did not respond to the discovery and opposed issuance of the subpoenas. BHA issued an order denying a motion to compel the discovery, and issued subpoenas, for testimony, for two of the seven witnesses requested.

At the hearing held by the ALJ, for Little Steps, the two principals testified, and for DPW, Moran, and Terry Shaner Wade, the Regional Director of the Northeast Regional Office (Wade) testified. The ALJ recommended denial of Little Steps' appeal. R.R. at 16a.

BHA accepted the ALJ's recommendation and denied Little Steps' appeal.

Little Steps filed a petition for review,[5] requesting that this Court reverse and vacate the adjudication. Little Steps also filed an application to stay the challenged adjudication, which was granted after oral argument.[6]

## II. Issues

Little Steps challenges the validity of the revocation and the administrative proceedings as failing to comport with due process. Primarily, Little Steps disputes the propriety of the revocation.

First, it asserts the Acting Deputy Secretary lacked signatory authority and first-hand knowledge to authorize revocation. The process for referring providers for sanctions is flawed because it relies on the observations of inspectors, whose recommendations are adopted by executives with decision-making authority. Second, Little Steps argues its regulatory violations do not warrant revocation or denial of a provisional license, and such negative sanctions do not comport with the Code. Next, Little Steps asserts BHA's decisions to deny discovery and issuance of certain subpoenas denied due process. Lastly, Little Steps charges BHA with error in concluding the evidence did not support a selective enforcement defense.

In addition, Little Steps claims DPW breached the Settlement. The alleged breaches precluded DPW from enforcing the Settlement against Little Steps.

---

**5.** Our review in an appeal of an adjudication of DPW is limited to determining whether constitutional rights were violated, an error of law was committed or whether necessary findings of fact were supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Winston v. Dep't of Pub. Welfare,* 675 A.2d 372 (Pa. Cmwlth.1996).

**6.** *See* Cmwlth. Ct. Order, 5/7/13 (Quigley, S.J.).

### III. Discussion

### A. Delegated Authority

During oral argument before this Court, Little Steps focused on the alleged faulty delegations underlying the revocation of its Certificate. First, Little Steps argued the then-Acting Deputy Secretary lacked authority to sign the Revocation Letter. Little Steps asserts that signatory authority is reserved to the Secretary of DPW. Absent express authorization or delegation, it contends, the Revocation Letter under the Acting Deputy Secretary's signature is ineffective. Second, Little Steps challenges his lack of first-hand knowledge of the violations.

In response, DPW explains the Acting Deputy Secretary had the authority of his position to sign the letter of revocation. It is common practice for Acting Deputies to sign and issue negative sanction letters in DPW. Otherwise, letters would be signed by lesser ranking officials. Similarly, Deputies routinely rely upon the findings by employees in the field, who report their observations to the ultimate decision-makers.

### 1. Deputy Secretary's Signatory Authority

■ Little Steps contends the revocation is a nullity because the delegation to the Deputy Secretary to sign the Revocation Letter is not established on this record. BHA did not address this issue. However, none of the cases Little Steps cites stands for the asserted proposition, that an agency head may not delegate to a deputy unless that delegation of authority is written and shown on the record. Moreover, Little Steps' position ignores the hierarchy established in the Administrative Code of 1929 (Administrative Code).[7]

Pursuant to the Administrative Code, the Deputy Secretary is empowered to act on behalf of the Secretary of DPW. Notably, there is no statutory requirement for a written authorization to enable deputy secretaries of DPW to perform the duties vested in the Secretary. Section 206 of the Administrative Code provides:

> Each administrative department shall have as its head an officer who shall, *either* personally, *by deputy, or by the duly authorized agent or employe* of the department, and subject at all times to the provisions of this act, exercise the powers and perform the duties by law vested in and imposed upon the department.

71 P.S. § 66 (emphasis added). Specifically, regarding the duties of a deputy, Section 213 of the Administrative Code states:

> The Governor shall appoint and fix the compensation of such number of deputy heads of administrative departments, except those of the Department of Auditor General and Treasury Department, as the Executive Board shall approve, *who shall, in the absence of the head of such department, have the right to exercise all the powers and perform all the duties by law vested in and imposed upon the head of such department, except the power to appoint bureau or division chiefs, or other assistants or employes,* and who may, at any time, exercise such of the powers and perform such of the duties of the head of his department as may be prescribed by the head of his department: Provided, however, That any such deputy shall not have the right to exercise any power or perform any duty which the Constitution of the Commonwealth of Pennsylvania requires the head of his department personally to exercise or perform.

71 P.S. §§ 51–732.

7. Act of April 9, 1929, P.L. 177, *as amended,*

71 P.S. § 73. The statute thus limits delegable duties *only* in the employment/appointment context.

Significantly, the cases Little Steps cites in support of its argument arise in the special area of employment. *See, e.g., Dep't of Pub. Welfare v. Sanders*, 102 Pa. Cmwlth. 426, 518 A.2d 878 (1986) (sustaining challenge to employee's removal when not authorized by proper signatory authority); *Vaughan v. Dep't of Educ.*, 52 Pa. Cmwlth. 38, 415 A.2d 150 (1980) (sustaining challenge to employee's dismissal when signed by non-appointing authority); *Brennan v. Smith*, 14 Pa.Cmwlth. 578, 324 A.2d 849 (1974) (regarding delegated authority of Deputy Secretary to dismiss employee appointed by the Secretary of Labor and Industry).

In *Sanders*, DPW removed a probationary employee from employment. The employee appealed his removal to the State Civil Service Commission (Commission). The Commission determined the removal was not authorized by the proper signatory authority, which DPW rectified shortly thereafter. It again dismissed the employee.

In *Sanders*, this Court analyzed signatory authority in the employment context, assessing whether the party who signed the letter of dismissal was in a supervisory chain of command, or had authority to take personnel actions. In reaching our conclusion, this Court also relied on DPW's personnel manual. The *Sanders* Court held that when the signatory authority on a personnel action letter is challenged, the burden to show the signature is proper is on the employing agency. There is no equivalent theory applicable to license revocations.

Similarly, the other cases Little Steps cites arise in the civil service context and are inapposite to a non-employment context. Thus, in *Brennan,* a discharged stenographer challenged her dismissal by filing a complaint in equity. The employee argued the Secretary of Labor and Industry was not permitted to delegate authority for dismissal to his Deputy Secretary. This Court, sitting en banc, disagreed. In so doing, we construed Section 213 of the Administrative Code to permit delegation. This Court noted the Secretary specifically authorized his deputy to sign personnel documents that normally required a Secretary's signature.

Similarly, in *Vaughan,* a former employee challenged the validity of his dismissal based on improper signatory authority. The employee noted his employer, the Department of Education, presented no evidence showing the signor on the letter was the appointing authority. In construing Section 807 of the Civil Service Act,[8] applicable to all civil servants, this Court agreed that only the persons permitted by law to make appointments had the authority to remove those appointed. This Court reasoned that proof of removal authority in the employment context is required.

Woven through all these cases is the common thread of a statutory provision requiring express signatory authority for the challenged personnel action. That common thread is absent here.

In contrast to *Sanders, Brennan,* and *Vaughan,* here, Little Steps points to no requirement specifying that the Secretary of DPW sign all licenses or revocation documents. Little Steps thus attempts to transfer the signatory authority necessary for adverse personnel actions to actions in revocation. The rationale behind these cases[9] simply does not apply without an

---

8. Act of August 5, 1941, P.L. 752, *as amended,* 71 P.S. § 741.807.

9. Little Steps also cites *Sherman v. Kaiser,* 664 A.2d 221 (Pa.Cmwlth.1995). There, this

equivalent statutory provision requiring specific signatory authority. *Compare* Section 807 of the Civil Service Act, 71 P.S. § 741.807 (dismissals of employees shall be signed by appointing authority), with Section 213 of the Administrative Code, 71 P.S. § 73 (deputy heads of departments have the right to exercise all powers and duties, except the power to appoint bureau or division chiefs, assistants or employees).

In addition, case law reflects that deputy secretaries routinely undertake the role of a Secretary to perform the duties of that office. *See, e.g., McFarland v. Dep't of Pub. Welfare*, 121 Pa.Cmwlth. 540, 551 A.2d 364 (1988), *appeal denied*, 524 Pa. 634, 574 A.2d 74 (1989) (deputy secretary took action to revoke a license); *Nw. Inst. of Psychiatry v. Dep't of Pub. Welfare*, 99 Pa.Cmwlth. 213, 513 A.2d 495 (1986) (noting deputy secretary's authority is presumed under the Administrative Code). Thus, DPW's argument that deputy secretaries have the authority of their office is supported by this Court's interpretation of the Administrative Code. *Vaughan.*

■ Further, that he was "Acting" Deputy Secretary does not undermine Klunk's signatory authority. Under *City of Pittsburgh v. Palermo*, 339 Pa. 173, 13 A.2d 24 (1930), once an official has been appointed, and is in open, notorious possession of the office, he is a *de facto* official acting under the color of authority regardless of his "acting" status. Authority is derived from an election or appointment. *Id.*

We also note that, during oral argument, DPW's counsel advised that if the Acting

Deputy Secretary lacked the requisite signatory authority for revocation, then Little Steps would not possess a valid license to revoke. We note Little Steps' counsel did not dispute the implication on rebuttal.

For these reasons, we conclude the then-Acting Deputy Secretary had authority to issue the Revocation Letter.

### 2. Flawed Process

■ Little Steps also argues the Acting Deputy Secretary should not have relied on the reports of lesser ranking officials with first-hand knowledge to determine the sanctions. In addition, it asserts that, in actuality, lesser ranking officials, (inspectors) made the decision on revocation prior to the issuance of the Revocation Letter. As a result, Little Steps claims, the decision is unauthorized.

DPW counters that under the administrative process, a decision-maker is authorized to adopt a recommendation of lesser ranking officials. Such is common practice in agencies across the Commonwealth.

The process of administrative agency heads acting on the recommendations of officials who are more familiar with the facts, by reason of their own investigation, is well-established. *See, e.g., Aaron's Boarding Home v. Dep't of Pub. Welfare*, 116 Pa.Cmwlth. 210, 541 A.2d 63 (1988) (revocation may be based on testimony of inspector who investigated complaint). Indeed, recommendations are routinely relied upon by the ultimate agency decision-makers.

Further, Little Steps' challenge that an official who signs an action must have

Court construed Section 213 of the Administrative Code to permit delegation unless it is contrary to our Constitution. Sherman asserted the Commissioner's delegation of adjudicatory functions when he also exercised prosecutorial functions violated his due process rights. This Court disagreed. Moreover,

as Little Steps did not assert commingling of administrative functions as tainting delegation, the case does not apply here. Also, *Sherman* did not require a written delegation. Rather, it underscored that Section 213 authorizes delegation of enforcement authority.

first-hand knowledge of its underlying content is likewise unsupported by applicable law. *See J.C. Penney Cas. Ins. Co. v. Dep't of Ins.*, 43 Pa.Cmwlth. 360, 402 A.2d 558 (1979) (same agency may investigate and prosecute violations; Commissioner need not investigate a case personally). To accept Little Steps' position that first-hand knowledge is a prerequisite for an agency head's (or its designee's) action would frustrate administrative practice and the hierarchy established by the Administrative Code, as well as thwart the separation of administrative functions. *See generally Lyness v. State Bd. of Med.*, 529 Pa. 535, 605 A.2d 1204 (1992) (precluding commingling of administrative functions).

Fact-finders or investigators become familiar with details that inform the ultimate decision-maker. These observations are invaluable when it is impractical for all agency decision-makers to review the facility and interview witnesses themselves. Thus, the process DPW uses is appropriate and pragmatic.

Moreover, the record is clear. DPW investigator, Moran, accumulated documentation regarding her observations at Little Steps. She then provided the LIS, and any additional necessary documentation, to the next level. That enabled the Acting Deputy Secretary to issue final approval, either accepting or rejecting the recommendation, based on the accompanying materials. R.R. at 336a–37a.

■ That an agency official with decision-making authority does not have first-hand knowledge of the facts, and relies on reports and documentation supplied to him, does not evince a flawed process. To the contrary, it is consistent with agency hierarchy and the principle of delegation. *Cf. R. v. Dep't of Pub. Welfare*, 535 Pa. 440, 449, 636 A.2d 142, 146 (1994) (credibility recommendations made by administra-

tive hearing officer who did not personally see all the witnesses).

### B. Certificate Entitlement

Little Steps next argues BHA erred in revoking its certificate and refusing to grant it a provisional certificate. Specifically, Little Steps challenges DPW's authority to impose negative sanctions on a provider based on the enumerated violations.

First, Little Steps claims it was error to impose sanctions without analyzing the sufficiency of non-compliance under Section 1026 of the Code, 62 P.S. § 1026(b). Second, Little Steps asserts it was error to impose negative sanctions without complying with the mandates in the Code, including notice, opportunity to cure, and issuance of a provisional certificate of compliance. Lastly, Little Steps contends the negative sanctions are unsustainable because they were predicated on irrelevant, improper and prejudicial information that BHA rendered inadmissible.

DPW counters that the law does not provide an entitlement to a provisional certificate in the event a provider's certificate is revoked. DPW argues BHA had proper authority and grounds to revoke Little Steps' Certificate here, particularly when the Settlement provides for revocation for any instances of noncompliance. In sum, DPW maintains the adjudication comports with applicable law, and it is supported by substantial evidence.

### 1. Revocation

■ DPW revoked Little Steps' Certificate for regulatory violations. DPW's actions are within its authority under Article X of the Code, Section 1016 of the Code, 62 P.S. § 1016 (relating to right to enter and inspect), Section 1021 of the Code, 62 P.S. § 1021 (relating to authority to adopt

regulations), and Section 1026 of the Code, 62 P.S. § 1026 (relating to refusal and revocation of licenses). The Code grants "broad supervisory powers to DPW." *St. Elizabeth's Child Care Ctr. v. Dep't of Pub. Welfare*, 600 Pa. 131, 136–37, 963 A.2d 1274, 1276–78 (2009) (construing another article of the Code that is comparable as to DPW's authority).

 Section 1026 of the Code expressly authorizes DPW to refuse to issue or revoke a license for violations of the Code or regulations. *Clites v. Dep't of Pub. Welfare*, 120 Pa.Cmwlth. 542, 548 A.2d 1345 (1988). Any *one* such violation provides sufficient grounds for refusing a license. *Altagracia De Pena Family Day Care v. Dep't of Pub. Welfare*, 943 A.2d 353 (Pa.Cmwlth.2007); *Pine Haven Residential Care Home v. Dep't of Pub. Welfare*, 99 Pa.Cmwlth. 1, 512 A.2d 59 (1986). This is particularly true when regulatory violations may endanger children.

 Here, DPW imposed sanctions against Little Steps in accordance with the Settlement. Under the Settlement, DPW reserved the right to revoke Little Steps' Certificate and to withhold a provisional certificate if compliance was not shown. R.R. at 23a. Little Steps entered into the Settlement to avoid more negative repercussions, and its status was thus "probationary." Even aside from the Settlement, DPW had ample grounds to revoke Little Steps' Certificate based on the numerous regulatory violations committed.

Specifically, Little Steps committed a number of violations regarding staff-child ratios and indoor space maximums. It failed to use the youngest child in a group of mixed-age children to determine the proper staff-child ratio and maximum group size. It also failed to maintain at least two staff members in the facility at all times when children were present, regardless of the staff-child ratio.

DPW regulations prescribe the staff-child ratios, based on age and other factors. *See* 55 Pa.Code §§ 3270.51, 3270.52, 3270.54. DPW regulations also set forth capacity maximums. 55 Pa.Code § 3270.106. Similarly, Little Steps had peeling paint on one wall, and it had no thermometer in its refrigerator in the infant room. Peeling paint and a missing refrigerator thermometer, which is needed to ensure food and formula is stored at a safe temperature, constitute additional regulatory violations. *See* 55 Pa.Code § 3270.77(a) (prohibiting peeled or damaged paint); 55 Pa.Code § 3270.107 (requiring operational thermometer at a temperature of 45 degrees or below).

DPW afforded Little Steps the opportunity to submit plans of correction to demonstrate compliance post-inspection. DPW accepted and considered the March and April POCs. These were opportunities to cure. Little Steps had notice of the March Inspection and of the consequences of noncompliance stated in the Settlement.

Nevertheless, the more troubling violations were discovered during the unannounced April Inspection. These involve deficient staff-child ratios, implicating inadequate supervision. As a child care facility, Little Steps' compliance with child supervision and staff-child ratios is of prominent concern.

Significantly, Little Steps does not dispute that these violations occurred. In fact, it maintains that it adequately addressed them through the March and April POCs, and it claims the violations were relatively minor. However, while laudable, subsequent corrective actions do not erase the fact that a licensee was in violation of regulations on the date of inspection. *Altagracia.*

Because the record supports BHA's finding of 10 regulatory violations, BHA

did not err in concluding certificate revocation was warranted.

### 2. Refusal of Provisional Certificate

■■■ Little Steps' argument that it is entitled to a provisional certificate of compliance fails for two reasons. First, there is no legal entitlement to a provisional certificate. *Burroughs v. Dep't of Pub. Welfare*, 146 Pa.Cmwlth. 509, 606 A.2d 606 (1992) (upholding denial of provisional certificate as operator failed to show substantial compliance). Additionally, the Settlement did not guarantee a provisional certificate. Rather, the grant of a provisional certificate was expressly contingent upon DPW conducting an inspection with satisfactory results. That contingency was not met.

The Code provides for provisional certificates for licensed child day care centers that demonstrate "substantial compliance" with the applicable statutes, ordinances and regulations. Section 1008 of the Code, 62 P.S. § 1008. Section 1008 of the Code states:

> When there has been substantial but not complete compliance with all the applicable statutes, ordinances and regulations *and* when the *applicant has taken* appropriate *steps to correct deficiencies,* the department shall issue a provisional license for a specified period of not more than six months which may be renewed three times. Upon full compliance, *a regular license* shall be issued immediately.

62 P.S. § 1008 (emphasis added).

Little Steps contends it is entitled to a provisional certificate because it submitted the March and April POCs timely, which showed substantial compliance. Under these circumstances, we are constrained to disagree.

By its terms, the statute does not contemplate issuance of a provisional certificate to a regular license holder, like Little Steps. *See Miller Home, Inc. v. Dep't of Pub. Welfare,* 124 Pa.Cmwlth. 198, 556 A.2d 1 (1989) (only the first provisional license is mandatory if an applicant shows substantial compliance). Section 1008 of the Code's use of the word "applicant" is key. The provisional certificate only became an option for this facility by virtue of its agreement to the Settlement.

Additionally, DPW may determine in its discretion whether compliance after-the-fact qualifies as substantial. *Burroughs.* In *Burroughs,* a day care center challenged denial of a provisional license, claiming substantial compliance with regulations. Like Little Steps, the day care center never contested its noncompliance. Also like Little Steps, the day care center asserted it substantially cured the violations in its plans of correction. This Court concluded the patterns of non-compliance violations shown in past inspections sufficed to deny a provisional license.

Like the day care center in *Burroughs* with a pattern of noncompliance in past inspections, Little Steps does not show after-the-fact compliance so substantial as to support a conclusion that DPW abused its discretion.

Regardless, "substantial compliance" does not apply here because Little Steps agreed to be bound by the Settlement. It is clear in the Settlement that DPW notified Little Steps of its intention to refuse to renew its Certificate in July 2008. After learning it was likely to lose at the administrative level, Little Steps agreed to be bound by the Settlement for two years. The Settlement is a means of additional supervision.

Thus, BHA did not err when it analyzed Little Steps' entitlement to a provisional certificate given its status as an existing license holder operating under the confines

of the Settlement. Applying a pure substantial compliance standard to Little Steps, as it posits, would negate the Settlement's terms.

Accordingly, we agree with BHA that DPW's dissatisfaction with Little Steps' compliance sufficed to refuse issuance of a provisional certificate of compliance here.

## C. Alleged Prejudice by Past Violations

BHA also properly rejected Little Steps' contention that the revocation is unsustainable because it is predicated upon improper considerations. The alleged improper considerations are Little Steps' past violations of child supervision and staff-child ratio regulations, which led to the Settlement. Little Steps asserts the revocation cannot be based on these grounds because these past violations were essentially expunged by the Settlement.

Little Steps' position regarding past violations is well-taken, and generally correct. Certainly, as BHA noted, Little Steps cannot be sanctioned for past conduct that is encompassed in the Settlement. Those violations which occurred prior to 2010, when the Settlement was executed, are not proper grounds or considerations for imposing negative sanctions. However, this Court does not accept Little Steps' broad characterization of "past conduct."

Little Steps construes the Settlement's protection from "attributing fault or wrongdoing to either party," R.R. at 22a, as applying to the *type* of violations, *i.e.,* staff-child ratio. It argues DPW could not consider that its 2010 violations of child supervision and staff-child ratio regulations showed a continuing failure to meet child supervision standards because these were the same violations that led to the near revocation in 2008 that the Settlement resolved. Were this Court to accept this interpretation, then any party to a

settlement would have free reign to commit the same type of violations *after* the Settlement. That would negate the purpose of the additional monitoring and penalties the Settlement entails.

In sum, BHA found that DPW proved a total of 10 violations (four in the March Inspection, and six in the April Inspection). All of these violations occurred after the Settlement; thus, they were properly considered.

## D. Due Process

Little Steps next asserts BHA's denial of discovery and subpoenas violated its due process rights. Specifically, it argues it was entitled to responses to discovery and to issuance of subpoenas for the Acting Deputy Secretary and Milia from CSC as persons with knowledge other witnesses lacked.

DPW responds BHA's discovery decisions satisfied constitutional due process. It argues BHA properly denied Little Steps' subpoena requests for a number of reasons. First, DPW notes the subpoena requests were defective. Second, the subpoenas sought irrelevant information. Third, DPW contends the information sought was available from lower-ranking officials.

### 1. Discovery Responses

Discovery is not generally available in administrative proceedings. *See generally Weinberg v. Ins. Dep't,* 41 Pa.Cmwlth. 319, 398 A.2d 1120 (1979) (contrasting administrative practice with the Pennsylvania Rules of Civil Procedure). The General Rules of Administrative Practice and Procedure (GRAPP), Title 1 Pa. Code, Part II, Chapters 31–35, apply when agencies hold a hearing, unless the agency adopted alternate procedures.

This Court holds that GRAPP governs the hearing rights of, and is the applicable law for, providers. *Nw. Inst. of Psychiatry.* GRAPP does not expressly permit discovery, other than requests for admission. 1 Pa.Code § 35.112. GRAPP procedures sufficiently provide notice, and permit review of any evidence an agency will introduce at hearing. Thus, they comport with the general principles of due process. A refusal to answer some discovery requests does not violate due process when there is no authority to conduct formal discovery. *See Cooper v. State Bd. of Med.,* 154 Pa.Cmwlth. 234, 623 A.2d 433 (1993). Moreover, discovery matters are within a tribunal's discretion. *Centennial Spring Health Care Ctr. v. Dep't of Pub. Welfare,* 115 Pa.Cmwlth. 450, 541 A.2d 806 (1988).

As Little Steps had no right to the discovery it sought, BHA did not violate its due process rights in failing to compel discovery.

### 2. Subpoenas

Little Steps requested subpoenas for Acting Deputy Secretary Todd Klunk and for Milia, the technical assistance manager for CSC, among others. BHA denied issuance of these subpoenas. In its brief, Little Steps focuses on the denial of the subpoena to compel testimony from then-Acting Deputy Secretary Klunk.

Section 35.142(a) of GRAPP, 1 Pa.Code § 35.142(a), provides generally that an ALJ may issue subpoenas when a party makes an application for evidence that is relevant and material to the proceedings. *Pre–Need Family Servs. E. Region v. Bureau of Prof'l & Occ. Affairs,* 904 A.2d 996 (Pa.Cmwlth.2006); *1st Steps Int'l Adoptions, Inc. v. Dep't of Pub. Welfare,* 880 A.2d 24 (Pa.Cmwlth.2005). The application must specify the relevancy, materiality, and scope of the testimony sought. *Id.* This Court will not reverse an ALJ's decision to limit witness production absent clear abuse of discretion.

This standard is mirrored, with more particularity, in BHA Standing Practice Order Rule 15. Rule 15 requires that applications for issuance of subpoenas contain a "brief explanation of how the subpoenaed person's testimony ... will assist the Administrative Law Judge in deciding the issue on appeal. The explanation must be separate and apart from any witness list." *Id.* Also, Rule 18 expressly authorizes BHA to decline issuance of any subpoena that does not demonstrate the need for or the relevance of a witness.

Here, none of Little Steps' subpoena requests contained the required information. Thus, the subpoenas failed on their face to comport with these standards. *See* R.R. at 56a–82a. Therefore, BHA's denial of the subpoenas is consistent with its rules.

Moreover, BHA determined that information sought from witnesses who lacked first-hand knowledge was not relevant to the revocation appeal. Its decision regarding relevance does not constitute an abuse of discretion.

As to the subpoena directed to Acting Deputy Secretary Klunk, BHA properly denied a subpoena compelling his testimony. An Acting Deputy Secretary would qualify as a high administration official because he has decision-making authority. It is typical to refuse such subpoenas to protect high-ranking officials from such intrusions. *Halderman v. Pennhurst State Sch. & Hosp.,* 559 F.Supp. 153 (E.D.Pa.1982) (explaining subpoenas should only be required upon certification that testimony of DPW department head was necessary and not available from a lesser-ranking official; granting motion to quash as to DPW Secretary).

■ Furthermore, Little Steps reveals that its reason in requesting a subpoena compelling the Acting Deputy Secretary's testimony was to learn about the deliberative process. The reason that subpoenas to high-ranking officials are denied is precisely to ensure that executive or deliberative process is protected. *See Commonwealth v. Vartan*, 557 Pa. 390, 733 A.2d 1258 (1999). The deliberations to which Little Steps sought access are protected by the deliberative process privilege. *See In re Interbranch Com'n on Juvenile Justice*, 605 Pa. 224, 988 A.2d 1269 (2010); *Vartan.*

In addition, non-privileged testimony was available from lesser-ranking officials, Moran and Wade. Moran had first-hand knowledge of the violations as she conducted both the March Inspection and the April Inspection. Therefore, she was the appropriate witness to testify regarding observed violations that formed the basis for the Revocation Letter.

### E. Selective Enforcement

■ Little Steps further asserts BHA erred in failing to find that DPW's revocation of its Certificate constituted selective enforcement. It claims discrimination is clear because DPW did not take similar action against other day care centers.

DPW responds that Little Steps lacked any evidence to indicate any disparate treatment. Absent at least some evidence of discrimination, discovery regarding selective enforcement is not authorized.

■ This Court consistently holds that an agency's exercise of enforcement discretion is not subject to judicial review. *Birch Hills Residence v. Dep't of Pub. Welfare*, 943 A.2d 357 (Pa.Cmwlth.2008); *Commonwealth v. Sanico, Inc.*, 830 A.2d 621 (Pa.Cmwlth.2003); *see also Koken v. One Beacon Ins. Co.*, 911 A.2d 1021 (Pa.

Cmwlth.2006). An agency has "sole responsibility to assess whether a violation has occurred and whether to expend agency resources on one particular enforcement action as opposed to another." *Koken*, 911 A.2d at 1030.

■ To prove a claim of disparate treatment, a petitioner must establish similarly situated persons were treated differently, and the decisions were made on some unjustifiable invidious basis. *Birch Hills.* Little Steps has not alleged facts on either point. DPW notes that Little Steps cites no case in which a facility was permitted to violate regulations with impunity because its violations are allegedly lesser than those committed by other licensed facilities.

■ Moreover, in cases of alleged selective enforcement, a party must make a showing of some disparate treatment before discovery on this issue may even be authorized. *Koken.* Specifically, a petitioner needs to produce evidence "tending to show the existence of the essential elements of the defense, 'discriminatory effect and discriminatory intent.'" *Id.* at 1031 (citing *United States v. Armstrong*, 517 U.S. 456, 468, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996)). In selective prosecution cases, the law is clear that the showing needed "to obtain discovery should itself be a significant barrier to the litigation of insubstantial claims." *Id.* (citing *Armstrong*, 517 U.S. at 464, 116 S.Ct. 1480).

Here, Little Steps submitted no evidence of disparate treatment despite the fact that BHA afforded Little Steps an opportunity after the hearing to present evidence regarding selective enforcement. BHA held the record open to await a response to the request Little Steps submitted on this issue pursuant to the Right–

to–Know Law.[10] After receiving a response to its request,[11] Little Steps was unable to offer evidence of a similarly-situated facility to buttress a selective enforcement claim.

Little Steps cites to several facilities and their violations in its brief, arguing the violations of other facilities are more severe than its own, yet, they are not similarly sanctioned. Pet'r's Br. at 63–64. However, Little Steps failed to show these facilities are similarly situated. Specifically, Little Steps did not establish any of these other facilities were subject to a settlement agreement.

As Little Steps had no evidence of selective enforcement, and it failed to allege sufficient facts in support, BHA properly rejected this defense.

### F. Breach of Settlement

As a final issue, Little Steps argues DPW breached the Settlement by failing to schedule and provide training in a timely manner. Little Steps suggests that by failing to perform training under the Settlement, DPW sought to sabotage Little Steps' ability to comply with the regulations. Next, Little Steps contends this alleged breach excused its own breaches of the Settlement and its noncompliance with the regulations. Lastly, Little Steps asserts DPW breached the Settlement by refusing to grant a provisional certificate.

DPW responds the Settlement did not contain a timeframe for the training. Thus, its training obligation was not time sensitive, and it did not breach the Settlement. Further, DPW notes that none of the violations underlying the revocation pertain to lack of training. As to the alleged contractual entitlement to a provisional certificate, DPW counters the Settlement specifies a provisional certificate will only be issued if DPW is satisfied that Little Steps is in compliance.

BHA did not address Little Steps' contractual claims. However, as Little Steps alleges DPW's breach of the Settlement excuses its noncompliance with its terms, the Court considers the enforceability of the Settlement on appeal.

At the outset, we acknowledge the Settlement, while an agreement, is not a typical bilateral contract imposing duties of performance on each party. DPW agreed not to pursue revocation in exchange for Little Steps agreement to heightened penalties for future non-compliance. Little Steps had the option to forego settlement, and potentially could have faced revocation years earlier. Instead, it chose to be governed by additional monitoring and training requirements.

Importantly, Little Steps does not dispute DPW's authority to enter into or enforce the Settlement. In fact, it emphasizes the enforceability of the Settlement. See Pet'r's Br. at 49. In addition, Little Steps does not claim lack of consent or duress as nullification grounds. Instead, it claims the Settlement is void because DPW did not perform its contractual duties.

Under principles of contract law, Little Steps' contract claim lacks merit. Breach of contract requires a breach in the terms of a contract and damages resulting from that breach. *Sewer Auth. of City of*

---

**10.** Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–67.3104.

**11.** Although it does not bear on this decision, it is noteworthy that DPW denied a request made on behalf of Little Steps for license inspection summaries. The Office of Open Records upheld the denial. This Court affirmed, reasoning the summaries were properly protected as investigative information. *Michak v. Dep't of Pub. Welfare*, 56 A.3d 925 (Pa.Cmwlth.2012).

*Scranton v. Pa. Infrastructure Inv. Auth. of Com.*, 81 A.3d 1031, 1041–42 (Pa. Cmwlth.2013) ("elements of a breach of contract are (1) the existence of a contract, (2) a breach of the duty imposed by the contract and (3) damages resulting from the breach").

First, we review the terms of the Settlement to discern whether DPW breached any duties thereunder. The specific duties alleged to be in breach are: (1) the duty to schedule and provide additional staff training; and, (2) the duty to issue a provisional certificate of compliance.

### 1. Additional Training

▮ As to its duty to train Little Steps' staff, the Settlement states:

In addition to the six (6) hours of annual training that all staff persons are required to obtain pursuant to [DPW's] regulations, all staff persons, including Cathy Oliver and Kimberly Grzesek, shall obtain *an additional two (2) hours of [DPW]-approved training regarding supervision of children,* and *an additional two (2) hours of [DPW]-approved training regarding staff-child ratio.*

R.R. at 24a (Settlement at ¶ 7) (emphasis added). It thus requires DPW approval for the training, without imposing an attendant obligation of performance on DPW. The obligation is imposed upon the staff persons to obtain the training.

Importantly, the Settlement does not specify a timeframe within which the training must occur. The only time constraints pertain to the staff members' compliance periods. With respect to staff whose annual training deadlines fell within the first 60 days of the date of the Settlement (February 10), the Settlement afforded Little Steps an additional 60 days to comply. R.R. at 24a–25a.

Absent a timeframe specified for the training, DPW cannot be in breach of the Settlement for failing to arrange the training.

Little Steps implies DPW committed bad faith, asserting it delayed the additional training intentionally. However, the record does not support that assertion.

Under the Settlement, Moran (a DPW employee) needed to make the referral to a third-party, CSC, to enable CSC to schedule the training. The record reflects the referral was misdirected initially. However, upon learning of the mistake, Moran directed it to the proper training contact. Although DPW put the training on hold while it was investigating the violations from the inspections, the training was scheduled afterward, in July 2010.

Without a breach of duty, Little Steps has no basis to excuse its own non-compliance with its duties under the Settlement or applicable law.

Contrary to Little Steps' portrayal, the Settlement does not set a lower standard for compliance, such as substantial compliance. Rather, Little Steps is subject to additional individualized scrutiny pursuant to the Settlement.

Administrative agencies create additional criteria as a means of ensuring compliance by the entities they license. For example, the Pennsylvania Liquor Control Board may impose additional conditions on a license that apply to a licensee, the violation of which provides grounds for revocation. Section 470(a) of the Liquor Code, Act of April 12, 1951, P.L. 90, *as amended,* 47 P.S. § 4–470(a) (regarding conditional licensing agreement); *see also Greg's Big Dawgs Bar & Grille, Inc. v. Pa. Liquor Control Bd.,* (Pa.Cmwlth., No. 886 C.D. 2013, filed Feb. 20, 2014) (unreported), 2014 WL 688133 (violation of conditional licensing agreements is proper grounds for nonrenewal of liquor license). Here, Little Steps' non-compliance with DPW regula-

tions, any one of which violates the Settlement, provided grounds for revocation. DPW was well within its authority to revoke Little Steps' Certificate in this scenario.

Furthermore, a remedy is afforded in breach of contract actions for "injuries that were a direct and foreseeable result of the breach, and that the parties could have reasonably foreseen with certainty at the time they made the contract." Pa. SSJI (Civ.) 19.260 (2013); *see Helpin v. Trustees of Univ. of Pa.*, 608 Pa. 45, 10 A.3d 267 (2010). Little Steps does not establish a basis for remedy because it suffered no adverse consequences as a direct and foreseeable result of the alleged untimely training. DPW did not take any adverse action against Little Steps as a result of the lack of additional training. Also, Little Steps submitted no evidence that lack of training caused its own breach and repeated non-compliance.

### 2. Provisional Certificate

 It is also clear that DPW's refusal to issue a provisional certificate is not a breach of contract. The applicable provision of the Settlement is contingent on DPW's satisfaction with the results of an announced inspection conducted within the month following execution of the Settlement. *See* R.R. 23a.

Here, DPW noted six violations in the March Inspection. DPW noted four more violations in the April Inspection. Considering the number and nature of the violations, and that an announced inspection discovered any violations, when Little Steps knew the consequences, DPW was not satisfied. As a result, it did not issue a provisional certificate. Because DPW had no contractual duty to issue the provisional certificate, it did not breach the Settlement.

For these reasons, this Court rejects Little Steps' contract claim.

### IV. Conclusion

There is no dispute that Little Steps committed 10 regulatory violations within two months of executing the Settlement of its prior revocation appeal. Ultimately, Little Steps disregards the constraints contained in the Settlement, and the ramifications of its agreement. Nonetheless, the record establishes that these violations are a proper basis for revocation of Little Steps' Certificate and denial of a provisional certificate apart from the Settlement.

Further, BHA did not commit any error below in denying discovery or rejecting Little Steps selective enforcement defense.

We likewise discern no merit in Little Steps' challenges to signatory authority and contractual compliance which BHA declined to decide.

As BHA's conclusions upholding license revocation and refusal are supported by its findings, which are in turn supported by substantial evidence, we affirm.

### *ORDER*

**AND NOW,** this 14th day of April, 2014, the adjudication of the Department of Public Welfare's Bureau of Hearings and Appeals is **AFFIRMED.**